772 So.2d 1131 (2000)
SOUTHERN ENERGY HOMES, INC.
v.
Michael ARD and Marsha Ard.
1971998.
Supreme Court of Alabama.
June 2, 2000.
*1132 John Martin Galese and W. Scott Simpson of John Martin Galese, P.A., Birmingham, for appellant.
Stephen T. Etheredge of Buntin, Etheredge & Dowling, L.L.C., Dothan, for appellees.
PER CURIAM.
The plaintiffs Michael Ard and Marsha Ard purchased a manufactured home, manufactured by the defendant Southern Energy Homes, Inc. The Ards' agreements, disputes, and claims against the retailer who sold them this manufactured home are not material to the issues dispositive of this appeal.
The Ards filed a civil action against both the retailer and Southern Energy. Only Count II (as amended), Count III, and Count V state discernible claims against Southern Energy. Count II (as amended) alleges in pertinent part:
"6. Defendant, Southern Energy Homes, Inc., issued an express warranty on said home providing that it would repair or replace defective materials and/or workmanship.
"7. Plaintiffs aver that said home contains numerous defects in material and workmanship and is unfit for habitation by the Plaintiffs and Plaintiffs' family.
"8. Defendants have been notified of such defects by Plaintiffs, but have failed or refused to correct said defects.
"9. Defendants' aforementioned failure or refusal to correct said defects constitutes a violation of the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act, 15 U.S.C. §§ 1501-12 (the `Magnuson-Moss Act')."
Count III alleges, in pertinent part that "the defendant, Southern Energy Homes, Inc., either negligently, willfully, wantonly, or intentionally constructed a manufactured home for the Ards in a deficient manner." Count III includes a catalog of specific defects in the manufactured home. While Count III also claims against "defendants" (plural) for certain "false and fraudulent misrepresentations," Count III does not allege any representations made by Southern Energy. Finally, Count V alleges, in pertinent part, that Southern Energy "negligently, willfully, or wantonly installed and wired a furnace in a manufactured home for the plaintiffs in a deficient manner" and thereby caused the furnace to "catch on fire resulting in damage to the plaintiffs' home."
Southern Energy moved the trial court to stay the litigation and to compel arbitration. In support of its motion, it submitted a document entitled "SOUTHERN ENERGY WARRANTY LIMITED ONE-YEAR/FIVE-YEAR WARRANTY" containing the language of an arbitration agreement between the manufacturer and the purchaser. The Ards did not file any objection to the submission of this document. Thus, the record establishes Southern Energy's prima facie case for the existence of the agreement to arbitrate. TranSouth Financial Corp. v. Bell, 739 So.2d 1110 (Ala.1999).
Southern Energy also submitted two affidavits by Don McNutt. Only one of these affidavits is material to the contested issues. It reads, in pertinent part:
"According to the books and records of Southern Energy Homes, Inc., the Ards requested and received warranty service from Southern Energy pursuant *1133 to the terms of the warranty issued by Southern Energy. At the time of service, Michael Ard signed a work order certifying that the parts and work described on the order have been furnished and the repairs had been made to his satisfaction."
The only evidentiary material submitted by the Ards in opposition to the motion to stay and to compel arbitration is an exhibit consisting of the 19-page "Home Owner's Manual" issued by Southern Energy. This Home Owner's Manual is the source of the same "Southern Energy Warranty Limited One-Year/Five-Year Warranty" submitted by Southern Energy itself. Pages 4 and 5 of the manual contain this warranty material. This warranty material includes the following arbitration language:
"IF THE PROBLEM IS STILL NOT RESOLVED
"If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled through binding arbitration as set out below:
"In the event of any dispute or claim, arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new', any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, or subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 USC 1, et seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
This language encompasses all of the claims alleged by the Ards against Southern Energy.
The Ards did not submit any other exhibits or any affidavit, deposition testimony, or other evidentiary material. The Ards did, however, submit to the trial court a brief presenting their arguments and authorities.
While the trial court granted the retailer's motion to compel arbitration, the trial court denied Southern Energy's motion to compel. The order of the trial court in its entirety reads as follows:
"ORDER

"The matter before the Court are two Motions to Compel Arbitration, one filed by Southland Quality Homes, Inc. (seller) and Southern Energy Homes, Inc. (manufacturer). The [Ards] argue that the Defendants' Motions to Compel Arbitration would be a violation of the Magnuson-Moss Act. [The Ards] also rely on Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (N.D.Ala.1997).
"[The Ards'] reliance on ... `"Waverlee is misplaced. In Waverlee the plaintiffs only brought a claim against the manufacturer. In the present case claims have been brought against the seller and the manufacturer.
"In Capital Investment Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997), it is stated:
"`[S]ix elements must exist before binding arbitration is mandated:
"`(1) That a valid and enforceable written agreement to arbitrate exists; (2) that a dispute exists between the parties; (3) that the dispute is referable to arbitration under the arbitration agreement; (4) that a demand for arbitration was made; (5) that the other party failed or refused to arbitrate; and (6) that the dispute arises from ... a contract involving interstate commerce.' ... An arbitration agreement must be enforced as any other contract is enforced, in accordance with its terms. Both federal and state courts have consistently held that the duty to arbitrate is a contractual obligation and that a party cannot be required to submit to arbitration *1134 any dispute that he did not agree to submit. The language of the contract entered into by the parties determines whether a particular dispute should be submitted to arbitration under the contract. (Citations omitted).'
"The Court finds that the six elements creating binding arbitration exist between the Ards and Southland. (See Southland Arbitration Agreement and [the Ards'] complaint).
"The same cannot be said of Southern [Energy's] attempt to force arbitration. The Court finds there is no specific agreement between the Ards and Southern [Energy]. The Ards never signed an agreement with Southern [Energy] as they did with Southland. Additionally, Southern [Energy] is the manufacturer and a nonsignatory party to the transaction. It also appears that Southern [Energy] attempts to distance itself from [the Ards] and Southland in its written warranty and its answer wherein Southern [Energy] claims a lack of privity. A review of [the Ards'] complaint indicates different causes of action against the two Defendants with the exception of Count II, which addresses certain warranties.
"The case sub judice is much similar to Ex parte Isbell, [708 So.2d 571 (Ala. 1997),] wherein Southern [Energy] is a party Defendant.
"Based on the holdings of Ex parte Isbell ... and [Woodson, supra], Defendant's (Southland Homes) Motion to Compel Arbitration is hereby granted.
"However, Defendant's ([Southern Energy's]) Motion to Compel Arbitration is hereby denied."
Southern Energy appealed, and we reverse and remand.
The Ards argue that we should affirm the trial court on two theories. The first is that the Ards never made any agreement to arbitrate. The second theory is that the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act (Magnuson-Moss Act), 15 U.S.C. § 1501 et seq., invalidates the arbitration provisions in the Southern Energy warranty. We find both theories invalid for the reasons we will explain.
On the one hand, we recognize that parties cannot be required to arbitrate unless they have agreed to arbitrate. 9 U.S.C. § 4 and AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986). On the other hand, the only pertinent evidentiary materials (as distinguished from arguments by counsel) are the Home Owner's Manual containing the warranty and arbitration language and the already-quoted affidavit of Don McNutt. While the Ards' arguments dispute their assent to the arbitration language and attack the effectiveness of the delivery of the arbitration language, no evidentiary materials of record support the Ards in this regard except the absence of any signatures by the parties in the Home Owner's Manual. This absence of evidentiary materials in opposition to arbitration distinguishes this case from the otherwise similar case of Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540 (Ala.2000).
The Ards are contractually bound to the arbitration provisions for two reasons. First, the affidavit of Don McNutt establishes, without contradiction, that the Ards have accepted the benefits of the warranty containing the arbitration provisions. This acceptance constitutes the Ards' acceptance of the arbitration provisions themselves. Rush v. Atomic Electric Co., 384 So.2d 1067 (Ala.1980). Second, the Ards have sued Southern Energy on the theory, among others, of express warranty. The only express warranty included in the evidentiary materials is the one containing the arbitration provisions. A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions. Value Auto Credit, Inc. v. Talley, 727 So.2d 61 *1135 (Ala.1999); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala.1999); Georgia Power Co. v. Partin, 727 So.2d 2 (Ala. 1998); Delta Constr. Corp. v. Gooden, 714 So.2d 975 (Ala.1998); Ex parte Dyess, 709 So.2d 447 (Ala.1997).
In further attack against the existence of an agreement to arbitrate, the Ards argue that the arbitration provisions are inconspicuous, in that the caption does not contain the word arbitration and the table of contents of the Home Owner's Manual does not include the arbitration provisions. Because, in all other respects, the arbitration language is just as conspicuous as the other provisions of the warranty, however, we find that it is a binding part of the warranty. See Mall, Inc. v. Robbins, 412 So.2d 1197 (Ala.1982), and Gaylord Department Stores of Alabama, Inc. v. Stephens, 404 So.2d 586 (Ala.1981).
The Ards, in support of their theory that the Magnuson-Moss Act invalidates the arbitration provisions, cite Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.1997), Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala. 1997), and Rhode v. E & T Investments, Inc., 6 F.Supp.2d 1322 (M.D.Ala.1998). Indeed, this very Court, in Southern Energy Homes, Inc. v. Lee, 732 So.2d 994 (Ala. 1999), cites both Wilson and Boyd with approval and reaches the same holding that the Magnuson-Moss Act invalidates arbitration provisions in a written warranty issued by a manufacturer of consumer goods. Justice See of this Court, however, filed a scholarly and thorough dissent in Lee. We now opine that Justice See's dissent in Lee is correct and the majority opinion is incorrect. Therefore, we overrule the majority opinion in Lee and adopt Justice See's dissent. On the rationale of Justice See's dissent in Lee, we hereby hold that the Magnuson-Moss Act does not invalidate arbitration provisions in a written warranty.
Because the record establishes the valid formation of the agreement to arbitrate, and the arbitration provisions validly and legally bind the Ards, the trial court erred in denying Southern Energy's motion to compel arbitration. Accordingly, the order denying this motion to compel arbitration is reversed and the cause is remanded to the trial court with instructions to vacate that order and to enter an order granting the motion, staying the court proceedings, and compelling arbitration.
REVERSED AND REMANDED.
HOOPER, C.J., and MADDOX, SEE, LYONS, and BROWN, JJ., concur.
HOUSTON, COOK, JOHNSTONE, and ENGLAND, JJ., dissent.
HOUSTON, Justice (dissenting).
See my special concurrence in Southern Energy Homes, Inc. v. Lee, 732 So.2d 994, 1000-04 (Ala.1999).
JOHNSTONE, Justice (dissenting).
I respectfully dissent. This Court should not overrule Southern Energy Homes, Inc. v. Lee, 732 So.2d 994 (Ala. 1999), and should not reverse the order of the trial court denying the motion of Southern Energy to compel arbitration.
In March 1996, the Ards purchased from Southland Quality Homes, Inc., ("Southland Homes") a mobile home manufactured by Southern Energy. The Ards signed a "MANUFACTURED HOME RETAIL INSTALLMENT CONTRACT AND SECURITY AGREEMENT" between them and Southland Homes that contains an arbitration provision:
"14. ARBITRATION: ALL DISPUTES, CLAIMS OR CONTROVERSIES ARISING FROM OR RELATING TO THIS CONTRACT OR THE PARTIES THERETO SHALL BE RESOLVED BY BINDING ARBITRATION BY ONE ARBITRATOR SELECTED BY YOU [`You', `your' means the Seller and also the Assignee or their affiliates (after the Contract is assigned by Seller).] WITH MY CONSENT. THIS AGREEMENT IS MADE PURSUANT *1136 TO A TRANSACTION IN INTERSTATE COMMERCE AND SHALL BE GOVERNED BY THE FEDERAL ARBITRATION ACT AT 9 U.S.C. SECTION 1. JUDGMENT UPON THE AWARD RENDERED MAY BE ENTERED IN ANY COURT HAVING JURISDICTION. THE PARTIES AGREE AND UNDERSTAND THAT THEY CHOOSE ARBITRATION INSTEAD OF LITIGATION TO RESOLVE DISPUTES. THE PARTIES UNDERSTAND THAT THEY HAVE A RIGHT TO LITIGATE DISPUTES IN COURT, BUT THAT THEY PREFER TO RESOLVE THEIR DISPUTES THROUGH ARBITRATION, EXCEPT AS PROVIDED HEREIN. THE PARTIES VOLUNTARILY AND KNOWINGLY WAIVE ANY RIGHT TO A JURY TRIAL EITHER PURSUANT TO ARBITRATION UNDER THIS CLAUSE OR PURSUANT TO A COURT ACTION BY YOU (AS PROVIDED HEREIN). THE PARTIES AGREE AND UNDERSTAND THAT ALL DISPUTES ARISING UNDER CASE LAW, STATUTORY LAW AND ALL OTHER LAWS INCLUDING, BUT NOT LIMITED TO, CONTRACT, TORT AND PROPERTY DISPUTES WILL BE SUBJECT TO BINDING ARBITRATION IN ACCORD WITH THIS CONTRACT. THE PARTIES AGREE THAT THE ARBITRATOR SHALL HAVE ALL POWERS PROVIDED BY LAW, THE CONTRACT AND AGREEMENT OF THE PARTIES. THESE POWERS SHALL INCLUDE ALL LEGAL AND EQUITABLE REMEDIES INCLUDING, BUT NOT LIMITED TO, MONEY DAMAGES, DECLARATORY RELIEF AND INJUNCTIVE RELIEF. NOTWITHSTANDING ANYTHING HEREUNTO [sic] TO THE CONTRARY, YOU RETAIN AN OPTION TO USE JUDICIAL (FILING A LAWSUIT) OR NON-JUDICIAL RELIEF TO ENFORCE A SECURITY AGREEMENT RELATING TO THE MANUFACTURED HOME SECURED IN A TRANSACTION UNDERLYING THIS ARBITRATION AGREEMENT, TO ENFORCE THE MONETARY OBLIGATION SECURED BY THE MANUFACTURED HOME OR TO FORECLOSE ON THE MANUFACTURED HOME. THE INSTITUTION AND MAINTENANCE OF A LAWSUIT TO FORECLOSE UPON ANY COLLATERAL, TO OBTAIN A MONETARY JUDGMENT OR TO ENFORCE THE SECURITY AGREEMENT SHALL NOT CONSTITUTE A WAIVER OF THE RIGHT OF ANY PARTY TO COMPEL ARBITRATION REGARDING ANY OTHER DISPUTE OR REMEDY SUBJECT TO ARBITRATION IN THIS CONTRACT, INCLUDING THE FILING OF A COUNTERCLAIM IN A SUIT BROUGHT BY YOU PURSUANT TO THIS PROVISION."
The retail installment contract identifies the make of the mobile home as "1996 Southern Energy."
The Ards also signed a separate arbitration agreement, ostensibly between them and Southland Homes, providing:
"Buyer acknowledges and agrees that the manufactured home purchased herein has traveled in interstate commerce. Buyer thus acknowledges that the home and other aspects of the sale, or financing transaction are involved in, affect, or have a direct impact upon, interstate commerce.
"Buyer and dealer [Southland Homes] agree that all the claims, demands, disputes, or controversies of every kind or nature that may arise between them concerning any of the negotiations leading to the sale, or financing of the home, terms and provisions of the sale, or financing agreement, arrangements for financing, purchase of insurance, or condition of the home, or any other aspects of the home and its sale, or financing shall be settled by binding arbitration conducted *1137 pursuant to the provision of 9 U.S.C. Section 1 [e]t seq. and according to the Commercial Rules of the American Arbitration Association. Without limiting the generality of the foregoing, it is the intention of the buyer and the dealer to resolve by binding arbitration all disputes between them concerning the home its sale or financing and its condition including disputes concerning the terms and conditions of the sale, or financing the condition of the home, any damage, manufacturing defect, cosmetic or otherwise or setup concern with the home, the terms and meaning of any of the documents signed or given in connection with the sale, or financing, any representations, promises or omissions made in connection with negotiations for the sale, or financing of the home, or any terms, conditions, or representations made in connection with the financing, credit life insurance, disability insurance, and warranty or service contract purchased or obtained in connection with the home.
"Either party may demand arbitration by filing with the American Arbitration Association a written demand for arbitration along with a statement of the matter in controversy. A copy of the demand for the arbitration shall simultaneously be served upon the other party. The buyer and dealer agree that the arbitration proceedings to resolve all such disputes shall be conducted in the city where dealer's facility is located."
This arbitration agreement is not signed by an employee or officer of Southland Homes.
When the mobile home was delivered, inside was a Homeowner's Manual which includes an express warranty by Southern Energy. The express warranty contains the following provision:
"If your problems are not satisfactorily remedied through the steps set out above, you are entitled to have the dispute settled through binding arbitration as set out below:
"In the event of any dispute or claim, arising out of or in connection with the design, construction, warranty or repair of any product or component supplied by the Manufacturer, the condition of the product, the conformity of the product, the merchantability of the product, whether such product is or is not `new', any representations, promises, undertakings or covenants made or allegedly made by the Manufacturer in connection with or arising out of any transaction or undertaking between the Manufacturer and any purchaser, subsequent purchaser, the Manufacturer and the purchaser of this product agree to submit such dispute or claim to binding arbitration, pursuant to the provisions of 9 USC 1, et seq. and according to the Commercial Rules of Arbitration of the American Arbitration Association then existing."
The express warranty is not signed by Southern Energy or the Ards.
In September 1997, the Ards sued Southland Homes and Southern Energy in the Houston County Circuit Court. They asserted claims of breach of contract, breach of warranty, fraud, and negligence against Southland Homes. The Ards asserted distinct claims of breach of express warranty and negligent, wanton, or willful manufacture against Southern Energy. Southern Energy filed a motion to stay the action and to compel arbitration of the Ards' claims. Southern Energy grounded its motion on the arbitration clause found in the express warranty it issued covering the mobile home, and upon the arbitration clause found in the retail installment contract made by the Ards and Southland Homes. Southland Homes likewise filed its own motion to compel arbitration.
The Ards filed an opposition to the motions to compel arbitration. They also amended their complaint to state claims pursuant to the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act (Magnuson-Moss Act), 15 U.S.C. § 1501 et seq., against Southland Homes and Southern Energy. The Ards also added *1138 claims of negligent, wanton, or willful installation of a furnace against Southern Energy. The Ards alleged that they notified Southland Homes and Southern Energy of numerous defects in the mobile home and that Southland Homes and Southern Energy failed or refused to correct the defects under the warranty. The Ards requested and received some warranty service from Southern Energy.
The trial court entered an order stating, in pertinent part:
"The Court finds that the six elements creating binding arbitration exist between the Ards and Southland [Homes]. (See Southland [Homes] Arbitration Agreement and Plaintiffs' complaint.)
"The same cannot be said of [Southern Energy's] attempt to force arbitration. The Court finds there is no specific agreement between the Ards and Southern [Energy]. The Ards never signed an agreement with Southern [Energy] as they did with Southland [Homes]. Additionally, Southern [Energy] is the manufacturer and a nonsignatory party to the transaction. It also appears that Southern [Energy] attempts to distance itself from Plaintiffs and Southland [Homes] in its written warranty and its answer wherein Southern [Energy] claims a lack of privity. A review of Plaintiffs' complaint indicates different causes of action against the two defendants with the exception of Count II, which addresses certain warranties.
"The case sub judice is much similar to Ex parte Isbell, [708 So.2d 571 (Ala. 1997),] wherein Southern [Energy] is a party Defendant.
"Based on the holdings of Ex parte Isbell ... and [Capital Investment Group, Inc. v. Woodson, 694 So.2d 1268 (Ala.1997),] Defendant's (Southland Homes[']) Motion to Compel Arbitration is hereby granted.
"However, Defendant's (Southern Energy['s]) Motion to Compel Arbitration is hereby denied."
Southern Energy appeals and raises seven issues: (1) "[w]hether the [Ards] are bound by the arbitration agreement set forth within [Southern Energy's] warranty where the arbitration agreement is sufficiently broad to encompass all the [Ards'] claims"; (2) "[w]hether an arbitration agreement must be signed and be `conspicuous' to be enforceable where such agreement is governed by the Federal Arbitration Act"; (3) "[w]hether the [Ards] are bound by all of the provisions of [Southern Energy's] warranty because [they] accepted service under the warranty and later sued Southern [Energy] alleging a claim of breach of warranty"; (4) "[w]hether the Magnuson-Moss Warranty Act prevents the enforcement of a binding arbitration agreement as to non-Magnuson-Moss claims where such claims do not relate to the warranty in the Act"; (5) "[w]hether the Magnuson-Moss Warranty Act prevents enforcement of a binding arbitration agreement subject to the Federal Arbitration Act as to Magnuson-Moss claims"; (6) "[w]hether the [Ards] should be equitably estopped from opposing the arbitration agreement set forth in the Retail Installment Agreement where Southern [Energy] is specifically mentioned in the Retail Installment Agreement, the language of the Retail Installment Agreement is broad enough to encompass all of the [Ards'] claims, and the [Ards'] claims against Southern [Energy] are sufficiently related to the relationship created by the contract"; and (7) "[w]hether the [Ards] are required to arbitrate their claims against Southern [Energy] based upon the arbitration agreements the [Ards] entered into at the time of the purchase where the [Ards] allege that Southern [Energy] is liable for the acts of Southland Homes." I will address the issues in categories.
I first address issue five relating to the effect of the Magnuson-Moss Act on the arbitration provisions. In Southern Energy Homes, Inc. v. Lee, supra, this Court held that the Magnuson-Moss Act "prohibits the inclusion in a written warranty of a *1139 provision calling for binding arbitration." In so holding, this Court adopted the rationale in Wilson v. Waverlee Homes, Inc., 954 F.Supp. 1530 (M.D.Ala.1997), aff'd, 127 F.3d 40 (11th Cir.1997) (table), and Boyd v. Homes of Legend, Inc., 981 F.Supp. 1423 (M.D.Ala.1997). In Waverlee Homes, United States District Court Judge Myron Thompson stated:
"b. The Magnuson-Moss Act
"In 1974, Congress enacted the Magnuson-Moss Act `In order to improve the adequacy of information available to consumers, [and] prevent deception.' 15 U.S.C.A. § 2302(a). It sets out clear and comprehensive requirements regarding disclosures, duties, and remedies associated with warranties on consumer products. Products covered by the Act include any `tangible personal property which is distributed in commerce and which is normally used for personal, family or household purposes.' § 2301(1). Relying on the Magnuson-Moss Act, the plaintiffs submit, alternatively, that, because the installment sales and financing contracts between them and Hart's Mobile Home provide for final or binding arbitration, they could not be compelled to arbitrate their claims against Waverlee. The court agrees with the plaintiffs on this issue, which surprisingly appears to be one of first impression for the courts.
". . . .
"The Act. The Magnuson-Moss Act indicates that Congress intended to preserve a judicial forum for consumers. The Act provides that `a consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with an obligation under this title or under a written warranty, implied warranty, or service contract, may bring suit for damages and other legal and equitable relief.' 15 U.S.C.A. § 2310(d). The Act recognizes only one exception to this entitlement. The Act provides for the establishment of `informal dispute settlement mechanisms,' § 2310(a)(1), or `informal dispute settlement procedures.' § 2310(a)(3). The Act states that `[o]ne or more warrantors may establish an informal dispute settlement procedure,' § 2310(a)(3); and that this procedure must comply with certain `minimum requirements' to be promulgated by the Federal Trade Commission. § 2310(a)(2). The Act further makes clear, however, that such dispute resolution procedures or mechanisms are nonbinding on the consumer and must be resorted to before the consumer may resort to a legal remedy, that is, to court. In other words, the procedures are a prerequisite, not a bar, to relief in court. The Act provides that, if a warrantor `establishes such a procedure,' § 2310(a)(3)(A), and if the procedure meets the Commission's rules, § 2310(a)(3)(B), and if the warrantor `incorporates in a written warranty a requirement that the consumer resort to such procedure before pursuing any legal remedy,' § 2310(a)(3)(C), `then ... the consumer may not commence a civil action ... unless he initially resorts to such procedure.' § 2310(a). Because the arbitration clauses contained in the installment sales and financing contracts between the plaintiffs and Hart's Mobile Home are binding, rather than non-binding, and are thus a bar to court relief, they conflict with the Magnuson-Moss Act and are unenforceable.2
"2. The court does not reach whether the arbitration clauses in the contracts between the plaintiffs and Hart's Mobile Home comply with the `minimum requirements' now prescribed by the Federal Trade Commission in its regulations.
". . . .
"The Act's Legislative History. A review of the legislative history of the Magnuson-Moss Act reinforces this conclusion. The remarks of Congressman *1140 Moss, one of the sponsors of the bill, are particularly illuminating:
"`First, the bill provides the consumer with an economically feasible private right of action so that when a warrantor breaches his warranty or service contract obligations, the consumer can have effective redress. Reasonable attorney's fees and expenses are provided for the successful consumer litigant, and the bill is further refined so as to place a minimum extra burden on the courts by requiring as a prerequisite to suit that the purchaser give the [warrantor] reasonable opportunity to settle the dispute out of court, including the use of a fair and formal dispute settlement mechanism....'
"119 Cong.Rec. 972 (Jan. 12, 1973) (emphasis added). Congressman Moss therefore made clear that the informal dispute settlement mechanisms or procedures are a `prerequisite,' not a bar, to suit in court. The House report on the bill makes this point even clearer. The report states that `An adverse decision in any informal dispute settlement proceeding would not be a bar to a civil action on the warranty involved in the proceeding.' H.R.Rep. 93-1107, 93d Cong., 2d Sess. 41, reprinted in 1974 U.S.C.C.A.N. 7702, 7723.3 This history reflects that it was Congress's intent that any non-judicial dispute resolution procedures would be nonbinding, and consumers would always retain the right of final access to court.
"3. The report goes on to say, however, that `the decision reached in any informal dispute settlement procedure relating to any matter considered in such procedure would be admissible in any civil action arising out of a warranty on a consumer product if the procedure complies with the FTC's rules and is incorporated as a part of a written warranty pertaining to consumer products.' H.R.Rep. 93-1107, 93d Cong., 2d Sess. 41, reprinted in 1974 U.S.C.C.A.N. 7702, 7723....
". . . .
"History of the Regulations. If there is any remaining doubt that the Magnuson-Moss Act and the regulations promulgated pursuant to it do not allow for binding non-judicial dispute resolution of the type provided in the arbitration clause in the installment sales and financing contracts between the plaintiffs and Hart's Mobile Home, that doubt is fully dispelled by the history of the regulations. Upon adopting 16 C.F.R. § 703.5(j) (which states that decisions of the mechanism `shall not be legally binding'), the Federal Trade Commission responded to public comments from industry representatives in favor of binding arbitration by remarking as follows:
"`Several industry representatives contended that warrantors should be allowed to require consumers to resort to mechanisms whose decisions would be legally binding (e.g., binding arbitration). The Rule does not allow for this for two reasons. First, ... Congressional intent was that Section 110 Mechanisms not be legally binding. Second, even if binding Mechanisms were contemplated by Section 110 of the Act, the Commission is not prepared, at this point in time, to develop guidelines for a system in which consumers would commit themselves, at the time of product purchase, to resolve any difficulties in a binding, but nonjudicial, proceeding. The Commission is not now convinced that any guidelines which it set out could ensure sufficient protection for consumers against warrantors, even if the Congressional report had not made clear, as it did, that it wished for such mechanisms to not be binding.'
"40 Fed.Reg. 60168, 60210 (1975). The Commission then goes on to state that `reference within the written warranty to any binding, non-judicial remedy is *1141 prohibited by the Rule and the Act.' Id. at 60211.5 These comments make clear that binding arbitration, of the kind contained in the contracts between the plaintiffs and Hart's Mobile Home, is not permissible under the regulations promulgated by the Federal Trade Commission.
"5. The Commission makes clear, however, that, after the warrantor and the consumer have pursued the settlement procedures established under the Magnuson-Moss Act, the warrantor may `offer a binding arbitration option' to the consumer. 40 Fed.Reg. 60168, 60211 (1975). But reference to such in the warranty is prohibited. Id.

". . . .
"The parties argue at great length about whether the FAA overrides the Magnuson-Moss Act and whether the Magnuson-Moss Act in fact precludes waiver of judicial remedy for violations of the rights of purchasers. What must be remembered, however, is that the court is not here confronted with a direct conflict between these two statutes. The limited and only issue before the court is whether Waverlee's enforcement of the specific binding arbitration clauses contained in the contracts with Hart's Mobile Home would violate the Magnuson-Moss Act.6
"6. See supra note 2.
"The court is also not presented with a picture pitting the purchaser's right to litigate a breach of seller's warranty against the seller's right to invoke a contractual arbitration clause. In other words, the combatants here are not Hart's Mobile Home and the plaintiffs. Rather, the issue is once removed; it is a cousin issue. Here, because Congress has addressed, in a definitive manner, the availability and scope of nonjudicial remedies for resolution of disputes between warrantors and consumers, it is no surprise, and no oversight, that the Waverlee warranty for the plaintiffs' [mobile] homes makes no mention of alternative mechanisms. Had Waverlee sought to include, in its warranty, the type of absolute bar on judicial remedies it is seeking here, it would have been in clear and direct violation of the Magnuson-Moss Act."
954 F.Supp. at 1537-39 (emphasis added). The rationale of Waverlee, including the recitation of the legislative history of the Magnuson-Moss Act, is still valid and true. The legislative history of the Magnuson-Moss Act, including the remarks of Senator Moss, a cosponsor of the Act, clearly evidences Congress's intent to preclude a waiver of judicial remedies for the statutory rights at issue. See 119 Congressional Record 972 and 15 U.S.C. § 2310(a)(2). See also Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 227, 107 S.Ct. 2332, 96 L.Ed.2d 185 (1987). Therefore, the Magnuson-Moss Act prohibits the inclusion of a binding arbitration provision in an express warranty and makes such an arbitration provision unenforceable. Southern Energy v. Lee, supra.
These conclusions moot issues one, two, and three all relating to whether the Ards are contractually bound to arbitrate. While the Ards may contractually enforce their warranty against Southern Energy, they are not bound to arbitrate their claims against Southern Energy because the arbitration provision in the warranty is unenforceable. Moreover, because no contract other than the warranty exists between Southern Energy and the Ards, they are not contractually bound to arbitrate their nonwarranty claims. This conclusion resolves issue four.
In issue six, Southern Energy invokes the doctrine of equitable estoppel by intertwining. In Waverlee, supra, Judge Thompson explains the two kinds of intertwining: (1) where the plaintiff's claim *1142 against a nonsignatory to a contract containing an arbitration clause asserts breach of duty imposed or entailed by that contract, and (2) where the plaintiff alleges conspiracy or agency between a nonsignatory and a signatory to a contract containing an arbitration clause. The estoppelby-intertwining doctrine requires a plaintiff to arbitrate either kind of such claim against the nonsignatory if the plaintiff must arbitrate the plaintiff's claims against the signatory. Judge Thompson explains:
"The main question to be decided in these cases is whether a warrantor who is a nonsignatory to a commercial installment sales and financing contract containing an arbitration clause may use contract principles, such as equitable estoppel, to apply the FAA and so compel buyers complaining of breach of warranty to arbitrate their claims.
"a. The FAA and Contract Law

"The FAA states that:
"`A written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'
"9 U.S.C. § 2. The `primary purpose' of the FAA is to ensure `that private agreements to arbitrate are enforced according to their terms.' Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford, Jr. Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 1255-56, 103 L.Ed.2d 488 (1989). `Arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their agreements as they see fit.' Id. It is a cardinal principle of federal arbitration law that `"arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."' AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 1418, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409 (1960)). Thus, initially, Waverlee must show that the plaintiffs when purchasing their homes under the installment and financing contracts with Hart's Mobile Home that make no mention of Waverlee, nonetheless constructively, or as a matter of law, agreed to arbitrate any dispute that might arise with Waverlee under express and applicable warranties.
". . . .
"First, parties to a contract may together agree, upon formation of their agreement, to confer certain benefits thereunder upon a third party, affording that third party rights of action against them under the contract. Barber v. Business Products Center, Inc., 677 So.2d 223, 227 (Ala.1996). However, the party claiming to be a third-party beneficiary of a contract bears the burden of establishing that the contracting parties intended to bestow a benefit upon it. Weathers Auto Glass, Inc. v. Alfa Mut. Ins. Co., 619 So.2d 1328 (Ala.1993).
"The installment sales and financing contracts between the plaintiffs and Hart's Mobile Home make absolutely no reference to Waverlee. In fact, the arbitration clause in the Woodall contract says that `the parties agree and understand that they choose arbitration instead of litigation to resolve disputes' (emphasis added), and goes on to discuss the security agreement between the parties, while the one in the Wilson contract says `Any controversy or claim between or among you and I or our assignees ... shall, if requested by either you or me, be determined by arbitration.' No stretch of the imagination would be adequate to encompass the concept that the parties to either contract contemplated disputes with non-parties relating to stated and implied *1143 warranties. Furthermore, the warranty provided by Waverlee neither contains an arbitration provision nor seeks to incorporate by reference the arbitration provisions in the installment sales and financing agreements between the plaintiffs and Hart's Mobile Home. Thus, the plaintiffs at no time and in no way agreed with Waverlee to waive their Magnuson-Moss Act rights, nor did they agree with Hart's Mobile Home to extend such a third-party benefit to Waverlee.
"Other exceptions to the general proposition that a nonparty has no standing to compel arbitration are equally inapplicable to these cases. At the outset, one very important point that often gets neglected in any discussion of nonsignatories and arbitration clauses must be made clear: There are instances, and cases, where nonsignatories to arbitration clauses may be equitably compelled to pursue their claims against a defendant in arbitration. See, e.g., In re Oil Spill by Amoco Cadiz, 659 F.2d 789, 796 (7th Cir.1981) (plaintiff who invokes the doctrine of agency to gain standing to assert a claim against a defendant cannot later disavow an arbitration clause in the contract between its agent and the defendant); Dunn Constr. Co. v. Sugar Beach Condominium Ass'n, 760 F.Supp. 1479 (S.D.Ala.1991) (party seeking status under contract as third-party beneficiary is estopped from later renouncing that status in order to prevent a party to the contract from compelling it to arbitrate a claim); and there are cases where, in general, ordinary contract and agency principles demand that nonsignatories be bound by arbitration clauses. See Thomson-CSF, S.A. v. American Arbitration Ass'n, 64 F.3d 773, 776 (2d Cir.1995) (presenting a list of common law contract and agency principles under which nonparties to arbitration clauses may be bound to arbitration agreements of others, but distinguishing these from cases where nonparties seek to bind parties to contractual arbitration clauses); Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, 7 F.3d 1110, 1121 (3rd Cir.1993) (principal and agent should both be bound to an arbitration agreement entered into by one of them when charges against both are based on the same facts and are inherently inseparable).
"Here, however, there is no agency relationship between Waverlee and Hart's Mobile Home. In fact, the Waverlee warranty specifically disavows such a relationship. Nor is there corporate identity between them. In addition, the relevant issues are not already in arbitration between the parties to the agreements; nor are there allegations of joint misconduct by a party to the arbitration agreements and the nonparty.
"In addition, the above reported cases, as Thomson-CSF points out, differ from ones where nonsignatories themselves seek standing to compel signatories to arbitrate claims with them. See, e.g., J.J. Ryan & Sons v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-21 (4th Cir.1988) (charges against parent company based on same facts as claim against subsidiary, with whom arbitration agreement is in effect, may be referred to arbitration also); Arnold v. Arnold Corp., 920 F.2d 1269, 1281 (6th Cir.1990) (nonsignatory defendant, as agent of signatory defendant, may compel arbitration); McBro Planning & Dev. Co. v. Triangle Elec. Constr. Co., 741 F.2d 342 (11th Cir.1984) (equitable estoppel allows nonsignatory defendant to compel arbitration); Sam Reisfeld & Son Import Company v. S.A. Eteco, 530 F.2d 679, 681 (5th Cir.1976) (nonsignatory defendants could stay judicial proceedings where charges against [signatory and nonsignatory] defendants were based on the same operative facts and were inherently inseparable); Britton, 4 F.3d at 744; A.L. Williams & Assoc., Inc. v. McMahon, 697 F.Supp. 488, 494 (N.D.Ga.1988).

*1144 "In other words, the situation when a party seeks to compel a nonparty to arbitration differs from a situation where a nonparty is seeking to compel a party. In the former instance, the party already has rights under the arbitration clause and is seeking to enforce them more broadly. In the latter, the nonparty must first, as a threshold, establish grounds, in law or equity, why it should be permitted to assert rights under a contract to which it is NOT a party.
". . . .
"The doctrine of equitable estoppel simply does not apply on the facts presented by the instant cases. Admittedly, as McBro demonstrates, equitable estoppel may apply where a party seeks, in some way, to benefit from an agreement without being in turn bound by it. Therefore, if the plaintiffs were alleging that the installment sales and financing contracts they had with Hart's Mobile Home imposed certain duties of performance upon Waverlee, they could not both assert the right to receive such performance from Waverlee under the contracts, and, at the same time, deny application of the arbitration clause governing disputes under those contracts. However, the plaintiffs brought their claims under a separate and distinct warranty agreement that contains no arbitration clause, and are thus not estopped from resisting Waverlee's efforts to compel them to submit their claims to arbitration. See Hartford Accident & Indem. Co. v. Scarlett Harbor Assoc. Ltd. Partnership, 109 Md.App. 217, 674 A.2d 106, 143, cert. granted, 343 Md. 334, 681 A.2d 70 (1996).
"It is not enough that the defendant and the third party have common and parallel duties toward the plaintiff, and so could both be sued on the same theory of tort. Thus, it is not determinative that the plaintiffs here could have chosen to sue Hart's Mobile Home on some of the liability theories raised in their complaints, but did not. What matters is that none of the duties the plaintiffs are claiming that Waverlee breached arose under and were assigned to it by the sales agreements between the plaintiffs and Hart's Mobile Home, which are the sole agreements governed by an arbitration clause here. The warranty claims here are not intertwined with and founded upon the sales installment agreements, except in the utterly collateral sense that if the plaintiffs had never purchased their mobile homes, they would not have been protected by the warranties that came with them.
". . . .
"In summary, Waverlee, in its various legal briefs and responses to the plaintiffs' arguments, aside from McBro and a few factually similar equitable estoppel cases that don't apply here, has failed to cite a single authority challenging the assertion that `An entity that is neither a party to nor agent for nor beneficiary of the contract lacks standing to compel arbitration.' Britton, 4 F.3d at 744. Because none of the exceptions discussed above applies, the court must conclude that Waverlee is not entitled to compel the plaintiffs to arbitrate their claims."
Waverlee, 954 F.Supp. at 1533-37.
Southern Energy raised this doctrine in Ex parte Isbell, 708 So.2d 571 (Ala.1997). As in Ex parte Isbell, Southern Energy is not a signatory to the retail installment contract between the Ards and Southland Homes. `"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."' AT & T Technologies, Inc. v. Communications Workers of America, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986) (quoting United Steelworkers v. Warrior & Gulf Navig. Co., 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). The arbitration provision of the retail installment contract does not compel arbitration of claims that do not arise from the contract or between the parties to that contract. *1145 "[T]his case is substantially identical to [Waverlee], in that `[t]he warranty claims here are not intertwined with and founded upon the sales installment agreement[], except in the utterly collateral sense that if the plaintiffs had never purchased their mobile homes, they would not have been protected by the warranties that came with them.'" Ex parte Isbell, 708 So.2d at 579 (quoting Waverlee, 954 F.Supp. at 1536 (emphasis added)). Similarly the Ards' claims against Southern Energy do not arise out of the retail installment contract. The Ards do not sue Southern Energy for a breach of any duty imposed or entailed by the retail installment contract. Nor is Southern Energy a party to the retail installment contract or a third-party beneficiary of that contract. Waverlee, supra. Thus, Southern Energy cannot rely on the arbitration provision of the retail installment contract to compel arbitration of the Ards' claims against it. Ex parte Isbell and Waverlee, supra.
Finally, because the Ards do not claim either agency or conspiracy between Southern Energy and Southland Homes, Southern Energy cannot assert that kind, or scenario, of estoppel by intertwining. Issue seven is factually incorrect in its premise that the Ards "allege that Southern [Energy] is liable for the acts of Southland Homes."
The trial court properly denied Southern Energy's motion to compel arbitration. We should follow Southern Energy Homes, Inc. v. Lee, supra, as precedent and should affirm the order of the trial court.
COOK and ENGLAND, JJ., concur.