These appeals are from the denial of a motion to compel arbitration. We affirm.
On February 26, 2002, Melda McCurdy sued Springhill Nursing Homes, Inc., doing business as the Springhill Senior Residence ("Springhill"); Thomas K. Steiner, the administrator of Springhill; Majesta Lang, a registered nurse employed by Springhill; and Shirley Webb, a Springhill employee. McCurdy alleged that the defendants were health-care providers whose negligent or wanton failure to provide her with proper health care while she was residing at Springhill had caused her personal injury. She also alleged as to Springhill and Steiner that they had injured her by negligently hiring and supervising employees at Springhill. On May 16, 2003, McCurdy amended her complaint to add four other Springhill employees as defendants and to add a claim alleging breach of contract. *Page 696 
The record reveals that McCurdy was discharged from Springhill Hospital on August 27, 2001; her diagnosis on discharge from the hospital was hypertension, chronic severe anxiety disorder, hypothyroidism, and numbness on her left side. She was to be directly admitted to Springhill for rehabilitation following a stroke. She was admitted to Springhill at approximately 12:30 p.m. She asserts that employees of Springhill would not give her her blood-pressure medication and that they refused her access to a telephone and that for those reasons she left the facility the morning after she was admitted, without the consent of her physician.
On June 26, 2003, the defendants' lawyer wrote a letter to McCurdy's lawyer stating that the defendants would seek to compel arbitration of McCurdy's claims based on an arbitration clause contained in Springhill's standard "Admission Financial Contract" ("the admission contract"), a copy of which was enclosed with the letter. On July 2, 2003, the defendants filed their motion to compel arbitration, arguing that by asserting a breach-of-contract claim McCurdy was alleging that she and the defendants had "entered into a contract," and she was apparently relying on "the contract she would have been required to sign" had she remained a patient at Springhill. McCurdy countered in her motion opposing arbitration that her claim "alleging a breach of contract is not based on an express written agreement; rather, the basis [of] the allegation is the existence of an implied contract." The motion to compel arbitration was briefed, and the trial court held a hearing on the motion on August 15, 2003; on the same day, McCurdy filed a motion to dismiss her breach-of-contract claim. On August 19, 2003, the trial court contacted the defendants' lawyer and requested that he draft an order denying the motion to compel arbitration. Although the resulting proposed order reflected a date of August 15, 2003, the defendants' lawyer notified the McCurdy's lawyer of the trial court's decision by a letter dated August 20, 2003, and submitted the proposed order to the trial court on August 22, 2003. The trial court granted McCurdy's motion to dismiss her breach-of-contract claim on August 25, 2003. The trial court entered the order denying the motion to compel arbitration by filing it with the circuit clerk on September 2, 2003. Springhill and Steiner appealed the denial of their motion to compel arbitration pursuant to Rule 4(d), Ala.R.App.P., on August 28, 2003.[1]
 "The standard of review for a ruling on a motion to compel arbitration is as follows:
 "`"`This Court reviews de novo the [grant or] denial of a motion to compel arbitration. Parkway Dodge, Inc. v. Yarbrough, 779 So.2d 1205 (Ala. 2000). A motion to compel arbitration is analogous to a motion for a summary judgment. TranSouth Fin. Corp. v. Bell, 739 So.2d 1110, 1114 (Ala. 1999). The party seeking to compel arbitration has the burden of proving the existence of a contract calling for arbitration and proving that [the] contract evidences a transaction affecting interstate commerce. Id."[A]fter a motion to compel arbitration has been made and supported, *Page 697 
the burden is on the non-movant to present evidence that the supposed arbitration agreement is not valid or does not apply to the dispute in question." Jim Burke Automotive, Inc. v. Beavers, 674 So.2d 1260, 1265 n. 1 (Ala. 1995) (opinion on application for rehearing).'
 "`"Fleetwood Enters., Inc. v. Bruno, 784 So.2d 277, 280 (Ala. 2000) (emphasis omitted)."'
 "Parkway Dodge, Inc. v. Hawkins, 854 So.2d 1129, 1132 (Ala. 2003) (quoting Lewis v. Conseco Fin. Corp., 848 So.2d 920, 922 (Ala. 2002))."
Edward D. Jones Co. v. Wehby, [Ms. 1020689, Nov. 21, 2003]882 So.2d 832, 835 (Ala. 2003).
In support of her motion in opposition to the defendants' motion to compel arbitration, McCurdy submitted her affidavit stating that she did not sign the admission contract, that she was never presented with such a document, and that she never had any conversation concerning an admission contract or the possibility that any dispute she might have with Springhill would be submitted to arbitration. She also submitted the affidavit of her son, Guy McCurdy, who testified that, although he met with a Springhill representative before his mother's admission, he was never presented with an admission contract before, during, or after his mother's stay at Springhill; he also testified that no representative of Springhill ever mentioned the possibility that any future dispute between it and his mother might be resolved by arbitration. The arbitration provision of the admission contract states:
 "17. The parties hereby agree to arbitrate any claims or disputes arising out of or in connection with the care rendered to Patient by [Springhill] and/or its employees in accordance with the provisions of the Uniform Arbitration Act, except that claims arising over nonpayment of charges for services rendered or products provided to Patient shall not be subject to arbitration. The parties understand that arbitration of claims shall constitute a waiver of the right to trial by judge and/or jury with the parties might otherwise have. The parties hereby agree to arbitration due to the potential for a more timely final resolution of the claim or dispute. The parties freely choose arbitration and understand that the arbitrator's decision is final and binding upon all the parties."
Steiner submitted an affidavit in support of the motion to compel arbitration in which he stated, in pertinent part, "All new residents at Springhill Senior Residence are required to sign, at or near the time or admission, an admission contract, which is attached hereto as Exhibit 1. This contract is the only contract between Springhill Senior Residence and its residents."
The defendants explain that they did not seek to enforce the arbitration agreement until McCurdy amended her complaint to add a count alleging breach of contract. Essentially, the defendants contend that McCurdy's breach-of-contract claim could relate only to an express contract, specifically, the admission contract, which is the only express contract used by Springhill in admitting residents, and that McCurdy's assertion of a breach-of-contract claim thus indicated her acceptance of the admission contract. In pertinent part, McCurdy's breach-of-contract claim stated:
 "30. By accepting the patient [McCurdy] for the purpose of monitoring her blood pressure and post-stroke rehabilitation in return for financial remuneration, the Defendants entered into a contract with the Plaintiff and separately and severally had a duty to provide reasonable *Page 698 
healthcare to the Plaintiff in a safe and/or sanitary environment;
 "31. The Defendants, separately and severally breached that duty by negligently/wantonly failing to:
 "a. Provide a safe environment free of fear and intimidation;
"b. Provide a sanitary environment;
"c. Administer essential medication. . . ."
(Emphasis added.) McCurdy goes on to allege a number of other deficiencies in the care provided her by the defendants and to state that those deficiencies caused McCurdy various emotional injuries and damage, including a reemergence of a post-traumatic stress disorder.
As noted, McCurdy's breach-of-contract claim was dismissed on August 25, 2003, and Springhill and Steiner appealed, prematurely, on August 28, 2003, from the trial court's denial of their motion to compel arbitration. The defendants make no argument concerning the propriety of the dismissal of McCurdy's breach-of-contract claim. Rather, they assert that McCurdy's breach-of-contract claim, once filed, manifested McCurdy's assent to the terms of the admission contract so that that contract, including the arbitration provision, became binding on McCurdy. The arbitration provision applies to "any claims or disputes arising out of or in connection with the care rendered"; thus, argue the defendants, that provision applies to McCurdy's surviving claims that the defendants negligently or wantonly failed to provide proper medical care and that Springhill and Steiner engaged in negligent hiring and supervision of employees at Springhill. Accordingly, we consider whether the defendants have met their burden of establishing the existence of a contract calling for arbitration under these circumstances. Edward D.Jones Co., supra.
Springhill argues that McCurdy's breach-of-contract claim has to be viewed as an assertion of her reliance on an express contract because, "under Alabama law, there does not exist an implied contract concerning the quality of medical care provided by health care providers, but . . . such claims lie in tort," citing Marsh v. St. Margaret's Hospital, 535 So.2d 147, 149
(Ala. 1988), and Lemmond v. Sewell, 473 So.2d 1047 (Ala. 1985). McCurdy argues to the contrary, citing Ex parte Odem,537 So.2d 919 (Ala. 1988), and K.A.L. v. Southern Medical BusinessServices, 854 So.2d 106 (Ala.Civ.App. 2003). We need not attempt to resolve this issue on the merits; the only relevant inquiry is whether, when McCurdy amended her complaint to assert that Springhill, "by accepting" her as a patient had "entered into a contract," she believed that she could proceed on an implied-contract theory. Her intent to do so, even if not sustainable, would control whether she had accepted and was attempting to rely on the written admission contract. Given her affidavit, nothing in the record suggests that McCurdy was even aware of the existence of the admission contract before Springhill's lawyer sent her lawyer a copy on July 26, 2003.
However, the defendants assert that the cases of Lyles v.Pioneer Housing Systems, Inc., 858 So.2d 226 (Ala. 2003), andSouthern Energy Homes v. Ard, 772 So.2d 1131 (Ala. 2000), support their contention that the contract applicable to McCurdy is not an implied contract but is the admission contract. InArd, the Ards sued Southern Energy Homes, the manufacturer of the Ards' mobile home, alleging a violation of Southern Energy's express warranty, a violation of the Magnuson-Moss Warranty — Federal Trade Commission Improvement Act, 15 U.S.C. § 2301 et seq. ("the Magnuson-Moss Act"), and the negligent manufacture of the mobile home. *Page 699 
The Ards also alleged fraud. Southern Energy sought to compel arbitration of the Ards' claims on the basis of an arbitration provision contained in its express warranty. Evidence in the form of an affidavit by Southern Energy employee Don McNutt indicated that the Ards had requested and received service under the warranty on their mobile home from Southern Energy. The evidence also indicated that the Ards did not sign any written agreement with Southern Energy expressly calling for arbitration. The trial court denied Southern Energy's motion to compel arbitration, and it appealed. After discussing the burdens imposed upon Southern Energy to establish its right to compel arbitration, see, e.g.,Edward D. Jones Co., supra, this Court concluded that the trial court's order denying arbitration was due to be reversed:
 "The Ards are contractually bound to the arbitration provisions for two reasons. First, the affidavit of Don McNutt establishes, without contradiction, that the Ards have accepted the benefits of the warranty containing the arbitration provisions. This acceptance constitutes the Ards' acceptance of the arbitration provisions themselves. Rush v. Atomic Electric Co., 384 So.2d 1067 (Ala. 1980). Second, the Ards have sued Southern Energy on the theory, among others, of express warranty. The only express warranty included in the evidentiary materials is the one containing the arbitration provisions. A plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions. Value Auto Credit, Inc. v. Talley, 727 So.2d 61
(Ala. 1999); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala. 1999); Georgia Power Co. v. Partin, 727 So.2d 2 (Ala. 1998); Delta Constr. Corp. v. Gooden, 714 So.2d 975 (Ala. 1998); Ex parte Dyess, 709 So.2d 447 (Ala. 1997)."
772 So.2d at 1134-35. The Court therefore concluded that the record showed the formation of a valid agreement to arbitrate, and it reversed the trial court's order denying Southern Energy's motion to compel arbitration.
In Lyles, the Lyleses, also purchasers of a mobile home, sued the mobile-home manufacturer, Pioneer, alleging breach of contract, breach of express and implied warranties, breach of the Magnuson-Moss Act, negligence, and fraud. Pioneer sought to compel arbitration based upon an arbitration provision contained in its express warranty. Two months after the motion to compel arbitration was filed, the Lyleses dismissed their breach-of-express-warranty claim. After arguments on the motion to compel arbitration, the trial court entered an order granting the motion. Three days later the Lyleses voluntarily dismissed their Magnuson-Moss Act claim and then filed a motion to vacate the order compelling arbitration. The trial court denied that motion, and the Lyleses appealed. On appeal, they argued that the trial court erred in compelling arbitration because they had never entered into a written contract calling for arbitration. As in Ard, the Court in Lyles recognized that the arbitration provision was included in the express warranty, which was not a document that the Lyleses were required to sign, and it considered whether "the Lyleses availed themselves of the benefits of Pioneer's written warranty, thus manifesting their agreement to the arbitration provision contained in it."858 So.2d at 228. After discussing Ard, the Court analyzed the situation in Lyles as follows:
 "Although the Lyleses voluntarily dismissed their express-warranty claim before the trial court ruled on Pioneer's motion to compel arbitration, they did not voluntarily dismiss their Magnuson-Moss Act claim until after the trial court *Page 700 
had issued its order compelling arbitration. Thus, when the trial court entered its ruling on the motion to compel arbitration the Lyleses' Magnuson-Moss Act claim was still pending.
 "In their complaint, the Lyleses made the following allegations in support of their Magnuson-Moss Act claim against Pioneer:
 "`Count Nine: Violation of Magnuson-Moss Warranty Act:
"`. . . .
 "`37. [Pioneer] failed to perform under its written warranties and complete repairs to the [Lyleses'] mobile home as guaranteed in the express warranties. [Pioneer] failed in its efforts to properly repair defects in the mobile home in violation of 15 U.S.C. 2301 et seq.
 "`38. [The Lyleses] timely advised [Pioneer] of defects in their mobile home on numerous occasions and afforded [Pioneer] reasonable opportunity to comply with [its] warranties and complete repairs.
 "`39. As a proximate result, [the Lyleses] were caused damages including but not limited to, actual and consequential damages; attorneys' fees, inconvenience, annoyance and mental anguish.'
 "The only express or written warranty in the record is Pioneer's express warranty, which contains the arbitration provision quoted above. Like the Ards, the Lyleses purported to claim the benefits of Pioneer's express warranty by alleging that Pioneer should be bound to perform its duties under the warranty, while simultaneously repudiating the condition contained in the warranty that warranty disputes would be settled by arbitration. Because the Lyleses manifested assent to Pioneer's written express warranty by availing themselves of its benefits, the trial court correctly held them to the conditions of the warranty by compelling arbitration as to the warranty disputes, as the arbitration provision found in the warranty stipulated."
858 So.2d at 230 (footnote omitted).
The defendants in the present case assert, by analogy to Ard
and Lyles, that because the only written contract is the admission contract, McCurdy manifested an assent to that contract by asserting a breach-of-contract claim. We disagree. In Ard
and Lyles, the facts were plain that the plaintiffs were claiming (and in Ard had actually received) benefits under the express language of the contracts containing the arbitration provisions. Unlike the Lyleses, McCurdy dismissed her breach-of-contract claim before the trial court ruled on the motion to compel arbitration. Thus, unlike the situations presented in Ard and Lyles, McCurdy has eliminated all contract claims from her action. Springhill takes the position in its brief that
 "[McCurdy] could have avoided arbitration by not asserting a breach of contract claim. See Cook's Pest Control v. Boykin, 807 So.2d 524 (Ala. 2001) (noting that, Georgia Power Co. v. Partin, 727 So.2d 2, 8 (Ala. 1998), `Justice Shores, in her dissent, expressed the implicit holding of that case when she wrote that "`the plaintiffs could have avoided arbitration by not amending their complaint to state a contract claim.'"')."
(Springhill's brief, pp. 36-37.) An amendment to a complaint dismissing a previously asserted claim has the effect of superseding the original complaint pro tanto, so that that aspect of the original complaint "is no longer functional."Telfare v. City of Huntsville, 841 So.2d 1222, 1227 (Ala. 2002). Therefore, we see no distinction between avoiding arbitration by not asserting a breach-of-contract claim and *Page 701 
avoiding it by eliminating the breach-of-contract claim by amendment.
We cannot conclude under these circumstances that McCurdy was seeking to avail herself of any benefit of Springhill's express contract at the time the trial court ruled on the motion to compel arbitration. Accordingly, the defendants have not met their burden set out in Edward D. Jones Co., supra, and the cases cited therein requiring them to prove the existence of a contract calling for arbitration, and we find no error in the trial court's denial of the defendants' motion to compel arbitration. The trial court's judgment in that regard is due to be affirmed.
1022026 — AFFIRMED.
1030006 — AFFIRMED.
NABERS, C.J., and BROWN and STUART, JJ., concur.
SEE, J., concurs in the result.
[1] Springhill and Steiner appealed separately from Lang and Webb; the two appeals were consolidated for this Court's review. Springhill and Steiner's appeal is properly before us by operation of Rule 4(a)(4), Ala.R.App.P., "A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after the entry and on the day thereof." Lang and Webb's notice of appeal was timely filed on October 1, 2003.