The undisputed facts are as follows:
Claridge at Hanover Partners, an Alabama general partnership ("Claridge") borrowed $4,025,000 from Central Bank of the South ("the Bank"). Claridge at Hanover, Inc., and Hinton Properties, Inc., the general partners of Claridge, executed the note evidencing the loan. John Robert Moody and Rebecca B. Moody are officers of Claridge at Hanover, Inc. Thomas F. Hinton is president of Hinton Properties. The promissory note was secured by a mortgage on real property and by a "Continuing Guaranty (Unlimited)" given by each of the Moodys and by Hinton. Claridge defaulted on the loan. Subsequently, the Bank sued the Moodys and Hinton, based upon their personal guarantees, and the trial court entered a summary judgment for the Bank against the Moodys and Hinton in the amount of $2,379,961.72. After subjecting all of the collateral other than the personal guarantees to the judgment, a deficiency of $319,359.75 remained, and the Bank sought to collect the deficiency from the Moodys and Hinton as the guarantors. Subsequently, the Bank and the Moodys entered into a pro tanto settlement providing that in consideration of a payment of $228,000, the Bank and the Moodys fully released each other from all claims relating to the judgment, but the Bank expressly reserved its rights to proceed against Hinton.
Subsequently, the Moodys sued Hinton, individually, and Hinton Properties, as a general partner of Claridge, to recover the $228,000 the Moodys had paid to the Bank. Hinton, Hinton Properties, and the Moodys filed motions for summary judgment. The trial court entered a judgment for the Moodys against Hinton, individually, in the amount of $15,493.50, based on Hinton's individual status as co-guarantor, and it entered a judgment for Hinton Properties against the Moodys. The Moodys filed post-judgment motions, which the trial court denied. The Moodys appeal only from the judgment entered for Hinton Properties.
The sole issue for our review is whether the Moodys, as guarantors, are entitled to recover from Hinton Properties all sums that they paid to the Bank for the benefit of Claridge.
It is undisputed that the Moodys and Hinton executed identical guarantees that "jointly and severally unconditionally guarantee [d] and promise[d] to pay to [Bank] . . . any and all indebtedness of [Claridge]." The guarantees provided, in pertinent part, as follows:
 "CONTINUING GUARANTEE "(UNLIMITED)
". . . .
 "(2) The liability of Guarantors shall be unlimited and shall cover all indebtedness of Borrowers to Bank.
 "(3) The obligations hereunder are joint and several, and independent of the obligations of Borrowers, and a separate action or actions may be brought and prosecuted against Guarantors whether action is brought against Borrowers or *Page 914 
whether Borrowers be joined in any such action or actions; and Guarantors waive the benefit of any statute of limitations or other defenses affecting their liability hereunder or the enforcement thereof.
". . . .
 "(6) Guarantors waive any right to require Bank to (a) proceed against Borrowers; (b) proceed against or exhaust any security held from Borrowers; or (c) pursue any other remedy in Bank's power whatsoever. Guarantors waive any defense arising by reason of any disability or other defense of Borrowers or by reason of the cessation from any cause whatsoever of the liability of Borrowers. Until all indebtedness of Borrowers to Bank shall have been paid in full, even though such indebtedness is in excess of Guarantors' liability hereunder, Guarantors shall have no right of subrogation, and waive any right to enforce any remedy which Bank now has or may hereafter have against Borrowers, and waive any benefit of, and any right to participate in any security now or hereafter held by Bank. Guarantors waive all presentments, demands for performance, notices of nonperformance, protests, notices of protest, notices of dishonor, and notices of acceptance of this Guaranty and of the existence, creation, or incurring of new or additional indebtedness."
(Emphasis added.)
The guaranty set forth above clearly constitutes an absolute guaranty — an unconditional undertaking by the Moodys, upon the maturity of the debt, to incur all of the liabilities for the indebtedness of Claridge to the Bank, independent of the obligations of Claridge to the Bank — and, under such an agreement, the Bank undisputedly had the right to pursue its remedy against the Moodys even without first going against Claridge. Pilalas v. Baldwin County Sav. Loan Ass'n,549 So.2d 92 (Ala. 1989).
Although the Moodys do not dispute that they agreed to be personally responsible for the note in the event of the default of Claridge, they contend that the trial court erroneously assumed that the Moodys were seeking contribution from Hinton Properties, Inc., when in fact, they say, their claim against Hinton Properties, Inc., was "based upon the theory ofsubrogation."[1] According to the Moodys, as a general partner of the primary obligor (Claridge), Hinton Properties, Inc., is itself primarily liable for all debts of the general partnership. Thus, the Moodys argue, as guarantors of the obligation of Claridge, they are entitled to be subrogated to the rights of the Bank and, therefore, are entitled to recover from Hinton Properties, Inc., a general partner of Claridge, all sums that the guarantors have paid for the benefit of the primary obligors.
However, under the clear terms of the guaranty agreement, the Moodys waived any right of subrogation "[u]ntil all indebtedness of [Claridge] to Bank shall have been paid in full even though such indebtedness is in excess of Guarantors' liability hereunder" — that is, in this case, until the Bank has been paid the deficiency on the note.
We note the Moodys' argument that their claims against Hinton Properties, Inc., were based on Ala. Code 1975, § 8-3-42
("Sureties entitled to summary judgment against principal and between each other") and on what they referred to as "the common law right of reimbursement." However, from a thorough review of the record, we conclude that the Moodys failed to argue § 8-3-42 to the trial court. Rather, the only mention of § 8-3-42 was in Hinton and Hinton Properties' memorandum brief on their motion for summary judgment but it was mentioned only insofar as it related to Hinton, individually; and its applicability in regard to Hinton is not at *Page 915 
issue on appeal. On review, we are limited to that which was before the trial court. Therefore, we pretermit any further discussion as to § 8-3-42.
Furthermore, as to the Moodys' argument that they were entitled to recover the amount they paid the Bank, based on "the common law right of reimbursement," as they contend is discussed in 38 Am.Jur.2d Guaranty § 127 ("Subrogation or substitution in place of creditor") p. 1135, it appears that what the Moodys term "the common law right of reimbursement" is merely another way of claiming a right of recovery via the doctrine of subrogation. Moreover, it appears, from a review of the Moodys' motion to amend the judgment, that they specifically claimed the right to recover against Hinton Properties, Inc., the amount they paid the Bank "based upon the theory of subrogation" (emphasis supplied by the Moodys in the motion).
Because we conclude that the Moodys waived any right of subrogation until all the indebtedness has been paid to the Bank, we affirm the trial court's judgment for Hinton Properties, Inc.
AFFIRMED.
HORNSBY, C.J., and MADDOX, STEAGALL, KENNEDY and INGRAM, JJ., concur.
SHORES, J., dissents.
[1] We note that in entering the judgment for Hinton Properties, Inc., the trial court held that because a judgment had not been entered against Claridge, the Moodys could not seek contribution from Hinton Properties, Inc. The Moodys argue that the trial court's "classification of [their] action against Hinton Properties, Inc., as 'contribution' [was] erroneous." Even if that classification was erroneous, we must, nevertheless, affirm the trial court's judgment if there are any sufficient grounds to do so.