Dr. Kimberly H. Cowen sued M.S. Enterprises, Inc.; Roy Robertson; Robertson and Associates, Inc.; and Dr. James Holland, alleging fraud. The case arose from an agreement between M.S. Enterprises and Cowen, pursuant to which Cowen operated a weight loss clinic and sold a weight loss supplement marketed by M.S. Enterprises. The trial court entered a summary judgment in favor of the defendants.
The dispositive issue is whether, in support of their summary judgment motion, the defendants made a prima facie showing that no genuine issue of material fact existed as to Cowen's fraud claim.
On a motion for summary judgment, the burden is initially on the movant to make a prima facie showing that there is no genuine issue of material fact (i.e., that there is no dispute as to any material fact), and that he is entitled to a judgment as a matter of law. Rule 56, Ala.R.Civ.P.; McClendon v.Mountain Top Flea Market, Inc., 601 So.2d 957 (Ala. 1992); Elginv. Alfa Corp., 598 So.2d 807 (Ala. 1992). "The burden does not shift to the opposing party to establish a genuine issue of material fact until the moving party has made a prima facie showing that there is no such issue of material fact."McClendon, at 958; Elgin, at 810-11.
Rule 56 must be read in conjunction with the "substantial evidence rule," § 12-21-12, Ala. Code 1975, for actions filed after June 11, 1987. See Bass v. SouthTrust Bank of BaldwinCounty, 538 So.2d 794, 797-98 (Ala. 1989). In order to defeat a defendant's properly supported motion for summary judgment, the plaintiff must present substantial evidence, i.e., "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." West v. FoundersLife Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989). This Court reviews the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Wilma Corp. v. Fleming Foods of Alabama, 613 So.2d 359
(Ala. 1993).
We initially note that this Court is limited to a review of the record alone, that is, it can consider only the evidence that was before the trial court when it made its ruling.King v. Garrett, 613 So.2d 1283 (Ala. 1993); Moody v. Hinton,603 So.2d 912 (Ala. 1992). The trial court granted Cowen's motion under *Page 455 
Ala.R.App.P. 10(f) to supplement the record with the depositions of Cowen, Holland, Robertson, and Frank Bromberg, who was Cowen's acquaintance. The Holland deposition was before the trial court before it entered the summary judgment. However, the record indicates that Cowen's full deposition, as well as the depositions of Bromberg and Robertson, was first submitted to the trial court only with the Rule 10(f) motion, which was made after Cowen had filed her notice of appeal. Only certain excerpts of Cowen's deposition had been filed with the trial court before it entered the judgment, and neither the Robertson nor the Bromberg deposition had been filed with the trial court before it entered the judgment. Therefore, the trial court erred in granting Cowen's Rule 10(f) motion to supplement the record with this evidence. Rule 10(f) provides for the supplementation of the record only to include matters that were in evidence in the trial court. That rule was not intended to allow the inclusion of material in the record on appeal that had not been before the trial court. Richburg v.Cromwell, 428 So.2d 621 (Ala. 1983). Consequently, we will review only the evidence that was before the trial court when it entered the summary judgment for the defendants.
The diet program at issue — called Medslim — was developed by Holland, a medical doctor. Beginning around 1985, Holland had used in his medical practice a low-calorie diet supplement called Medifast, to assist patients in losing weight. Holland purchased packages of the Medifast diet supplement from a pharmaceutical company, Jason Pharmaceuticals, which manufactured Medifast and a similar product, Optifast. Jason Pharmaceuticals, however, did not offer specific training or support materials along with Medifast. Holland obtained permission from Jason Pharmaceuticals to "private label" Medifast as Medslim, exclusively for Holland. Afterwards, Holland and Robertson, as shareholders of M.S. Enterprises, Inc., began to market the Medslim program to other doctors for use in their medical practices. The Medslim program as marketed by M.S. Enterprises included the Medslim supplement and a manual, written by Holland, that contained detailed instructions on managing the weight loss program.
Cowen, an anesthesiologist, met with Robertson and Holland in 1988 at the Shoal Creek Country Club in Birmingham, where they discussed the Medslim diet program. Soon afterwards, on August 8, 1988, Cowen signed an association agreement with M.S. Enterprises, Inc., and gave M.S. Enterprises a $25,000 "association fee." Cowen incorporated Hoover Medslim, Inc., whose stockholders included Cowen, Bromberg, and Robertson, to operate a Medslim weight loss clinic. Hoover Medslim, Inc., operated from October 1988 through September 1990, when it closed.
Cowen argues that Robertson misrepresented to her that Medslim was a "unique product and program." Cowen asserts that Robertson told her that Medslim was an exclusive product unavailable outside the M.S. Enterprise system and that the Medslim program could not be duplicated. Cowen contends that she did not learn, until after she had made her investment into the Medslim business, that Medslim was also offered by Jason Pharmaceuticals as Medifast and had been privately labeled by Jason Pharmaceuticals as Medslim for M.S. Enterprises, Inc. She states that, had she known that Medslim was available from Jason Pharmaceuticals as Medifast, she could have purchased the supplement from Jason Pharmaceuticals and would not have been required to pay the association fee required by M.S. Enterprises, Inc.
In support of their motion for summary judgment, the defendants produced several pieces of evidence, including excerpts of Cowen's deposition and including Holland's affidavit and deposition.
The excerpts of Cowen's deposition included the following statements:
 "Q: Prior to the time that you executed [the association agreement] were you furnished any type of technical publications on either the supplement products that were used in the program or the program itself?
 "A: [Robertson] showed me the supplement, I believe, I feel sure, he showed me *Page 456 
the supplement prior to signing this that said Medslim.
"Q: You mean a can of it?
"A: Or a packet of it.
". . . .
 "A. Right after signing this he gave me a couple of notebooks with information —
". . . .
"A. — about it.
". . . .
 "A. But as I recall, the notebooks were right after I signed and he might have given me, prior to signing, some things that Dr. Holland printed and would send out —
". . . .
"A. — to various physicians.
 "Q. These notebooks, were they like three-ring binder notebooks?
"A. As I recall, yes.
". . . .
 A. [The notebooks] had a how-to section about how to give the diet appropriately to patients.
". . . .
 "Q. . . . . And when was it that you got the notebook from [Robertson]?
 "A. If I recall, it was after I, it was after I paid the money."
Holland's deposition included the following statements:
 "[Holland]: [Soon after the Shoal Creek meeting in 1988] I told [Cowen] that [Medslim] was a . . . protein supplement . . . that was developed by Jason Pharmaceuticals and was called Medifast, and we had a private label for us.
". . . .
 ". . . [W]e discussed with [Cowen], as we do with all the doctors that came in, that we had a private label supplement.
 "It was given to her in a pamphlet, a booklet that we gave out telling her that it was made for us by Medifast."
Holland's deposition does not specifically state when the booklet was given to Cowen.
Attached to Holland's affidavit were excerpts from what Holland stated was "a three-ring notebook which [Holland] had printed [for] . . . the Medslim program." Holland testified that "[t]his manual was the only manual in existence at the time [Cowen] enrolled in the Medslim program in August of 1988" and that a "three-ring notebook containing this manual . . . was given to [Cowen] in August of 1988." Holland also stated that there had been no prior manual. The notebook contains the following statement:
 "This is the Medifast supplement which has been private labeled for Medslim. The supplement is identical to Medifast and all research, etc., regarding Medifast applies to the Medslim product. The Medslim diet has the uniqueness of being our own distinctive product, backed by the many years of medical development and testing of the Optifast/Medifast formula."
In opposition to the defendants' summary judgment motion, Cowen submitted an affidavit stating the following:
 "[The association fee of $25,000] was tendered before any agreements were executed and before any manuals or notebooks were given to me. . . .
 ". . . I did not receive two notebooks which contained the information alleged [concerning the private labeling of Medslim]. . . .
 "Prior to entering into the agreement with M.S. Enterprises, Inc, I had no involvement with a weight loss business. I relied entirely on the representations of the Defendants in entering into this Agreement."
"Fraud" is defined by Ala. Code 1975, § 6-5-101:
 "Misrepresentations of a material fact made willfully to deceive, or recklessly without knowledge, and acted on by the opposite party, or if made by mistake and innocently and acted on by the opposite party, constitute legal fraud."
Fraud, as defined by § 6-5-101, includes four elements: (1) There must be a false representation; (2) the false representation must concern a material existing fact; (3) the plaintiff must rely upon the false representation; and (4) the plaintiff must be damaged *Page 457 
as a proximate result. Harmon v. Motors Ins. Corp.,493 So.2d 1370, 1373 (Ala. 1986).
Fraud may also be committed by the suppression of material facts. Ala. Code 1975, § 6-5-102, provides the following:
 "Suppression of a material fact which the party is under an obligation to communicate constitutes fraud. The obligation to communicate may arise from the confidential relations of the parties or from the particular circumstances of the case."
After reviewing the record in a light most favorable to Cowen and resolving all reasonable doubts against the defendants, seeWilma Corp., supra, we hold that there was sufficient evidence of a genuine issue of fact in this case to make the trial court's entry of summary judgment inappropriate. We hold that the defendants failed to make a prima facie showing that no genuine issue of material fact existed as to their alleged misrepresentation about Medslim to Cowen. Because the defendants failed to make that showing, the burden did not shift to Cowen to produce substantial evidence to rebut the summary judgment motion. Rule 56(c). Cowen had no obligation to offer substantial evidence of a material fact; however, it is clear that her deposition presented substantial evidence of a material fact that would have overcome the defendant's motion, had the defendants' motion made the prima facie showing required under Rule 56.
A genuine issue of material fact exists as to whether Cowen, before she paid her fee and then opened the Hoover Medslim business, was given information regarding the fact that Jason Pharmaceuticals was producing the Medifast product. Although the Medslim manual states that the Medslim supplement is identical to Medifast, there was no evidence submitted to indicate that Cowen had an opportunity to review the information in the notebook until after she had paid the Medslim association fee. If the defendants misrepresented Medslim as a "unique product" and in fact the product was available under a different name, the jury could reasonably determine that the defendants' failure to disclose the repackaging — "private labeling" — of Medslim until after Cowen had paid the association fee, if such a failure occurred, was a concealment of a material fact. Further, because Cowen had had no previous experience in the weight loss treatment business, the jury could find that she relied to her detriment upon the defendants' alleged representation as to the unique qualities of the Medslim product. The jury could find that Cowen sustained damage as a proximate result of investing money into the now defunct Medslim business. The questions as to what Cowen knew, and when she knew it, are genuine issues of material fact.
We further hold that the question as to whether M.S. Enterprises had a duty to disclose the repackaging of Medifast to Cowen before she joined the business involves an inquiry into the knowledge of these parties and the circumstances surrounding the August 8, 1988, transaction. Therefore, this is also a factual question for the jury, not a question for the trial court. See Ala. Code 1975, § 6-5-102; Lowder Realty, Inc.v. Odom, 495 So.2d 23 (Ala. 1986); Jim Walter Homes, Inc. v.Waldrop, 448 So.2d 301 (Ala. 1983).
For the foregoing reasons, the defendants' summary judgment is reversed.
REVERSED AND REMANDED.
HORNSBY, C.J., and MADDOX, SHORES and STEAGALL, JJ., concur.