858 So.2d 226 (2003)
Debra LYLES and Derrick Lyles
v.
PIONEER HOUSING SYSTEMS, INC.
1010908.
Supreme Court of Alabama.
March 14, 2003.
*227 James G. Bodin and G. William Gill of McPhillips, Shinbaum & Gill, L.L.P., Montgomery, for appellants.
David L. Selby II, Kyle C. Barrentine, and Olivia S. Matuszak of Kee & Selby, L.L.P., Birmingham, for appellee.
BROWN, Justice.
Debra and Derrick Lyles, plaintiffs in an action pending in the Elmore Circuit Court, appeal from that court's order compelling them to arbitrate their claims against the defendant, Pioneer Housing Systems, Inc. ("Pioneer"). We affirm in part, reverse in part, and remand.

Facts and Procedural History
On October 14, 1999, Debra Lyles and Derrick Lyles bought a new mobile home from a dealer located in Clanton. The home was manufactured by Pioneer. After the mobile home was delivered to the Lyleses in Wetumpka, they began to experience various problems with the home.[1] On January 12, 2001, the Lyleses sued Pioneer, alleging breach of contract, breach of implied and express warranties, violation of the Magnuson-Moss WarrantyFederal Trade Commission Improvement Act, negligence, and fraud.
On March 2, 2001, Pioneer filed a motion to compel the Lyleses to submit all of their claims against Pioneer to arbitration. In support of the motion to compel, Pioneer submitted a copy of a written warranty, a copy of an unsigned arbitration agreement, and an affidavit of Parker Holloway, Pioneer's director of service. On May 7, 2001, the Lyleses voluntarily dismissed their breach-of-express-warranty claim against Pioneer. After a hearing on Pioneer's motion to compel arbitration, the court granted that motion on October 9, 2001. On October 12, 2001, the Lyleses voluntarily dismissed their Magnuson-Moss Act claim against Pioneer. On December 21, 2001, Pioneer filed a notice, purporting to consent to the voluntary dismissal of the express-warranty and Magnuson-Moss Act claims. The Lyleses filed a motion to *228 vacate the order compelling arbitration, and the trial court scheduled a hearing. When the Lyleses and their counsel failed to appear at the hearing because of scheduling conflicts, the trial court denied the motion to vacate on December 21, 2001. On January 31, 2002, the Lyleses filed a notice of appeal with this Court.

Standard of Review
We review de novo a trial court's ruling on a motion to compel arbitration to determine whether the trial judge erred in deciding a factual or legal issue, and, if so, whether the error substantially prejudiced the party seeking review. See Potts v. Baptist Health Sys., Inc., 853 So.2d 194, 196-97 (Ala.2002).
"The burden of proof on the party seeking to compel arbitration is well established. `A motion to compel arbitration is analogous to a motion for a summary judgment.' Ex parte Caver, 742 So.2d 168, 172 n. 4 (Ala.1999). `The party seeking to compel arbitration has the initial burden of proving the existence of a contract calling for arbitration and proving that the contract evidences a transaction substantially affecting interstate commerce.' American Gen. Fin., Inc. v. Morton, 812 So.2d 282, 284-85 (Ala.2001) (plurality opinion). See Sisters of the Visitation v. Cochran Plastering Co., 775 So.2d 759 (Ala.2000). `If the party seeking to enforce the arbitration agreement fails to make such a showing, then the opposing party has no burden of resisting arbitration and the motion should be denied.' Brown v. Dewitt, Inc., 808 So.2d 11, 14 (Ala.2001)."
Brookfield Constr. Co. v. Van Wezel, 841 So.2d 220, 221 (Ala.2002)(footnote omitted).

Analysis

I.
The Lyleses argue that the trial court erroneously compelled them to arbitrate their claims against Pioneer because, they maintain, they never entered into a written contract calling for arbitration. Pioneer responds by asserting that the Lyleses, by accepting benefits under Pioneer's written warranty, agreed to arbitrate their claims against Pioneer. The warranty contains the following provision: "Warranty disputes will be settled under the Rules of Arbitration, unless prohibited by state law." Specifically, Pioneer contends that the Lyleses accepted the benefits of the written warranty by alleging in their complaint a breach-of-express-warranty claim and a Magnuson-Moss Act claim. The Lyleses respond that because they voluntarily dismissed both of those claims, there is no evidence in the record indicating that they received the written warranty from Pioneer or that they claimed benefits under the written warranty.
The dispositive issue is whether the Lyleses availed themselves of the benefits of Pioneer's written warranty, thus manifesting their agreement to the arbitration provision contained in it.
"`"[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit."' AT & T Techns., Inc. v. Communication[s] Workers of America, 475 U.S. 643, 648 (1986)(quoting United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582 (1960)); and see Ex parte Lovejoy, 790 So.2d 933 (Ala. 2000). `"When deciding whether parties agree to arbitrate a certain matter (including arbitrability) courts generally... should apply ordinary state-law principles that govern the formation of contracts."' Oakwood Mobile Homes, Inc. v. Barger, 773 So.2d 454, 459 (Ala. 2000) (quoting First Options of Chicago, *229 Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). `"The requisite elements of [a contract] include: an offer and an acceptance, consideration, and mutual assent to terms essential to the formation of a contract."' Ex parte Grant, 711 So.2d 464, 465 (Ala.1997) (quoting Strength v. Alabama Dep't of Finance, Div. of Risk Mgmt., 622 So.2d 1283, 1289 (Ala.1993)). `Assent must be manifested by something. Ordinarily, it is manifested by a signature. [However], [a]ssent may be manifested by ratification.' Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105, 108 (Ala.2000) (citing Southern Energy Homes, Inc. v. Harcus, 754 So.2d 622, 625 (Ala.1999)), wherein this Court remanded the case to the trial court for a finding of whether the purchasers of a manufactured home ratified and thereby accepted an arbitration provision by accepting repairs pursuant to a warranty containing the arbitration provision."
Ex parte Cain, 838 So.2d 1020, 1027-28 (Ala.2002).
Furthermore, assent to a contract may be manifested when a plaintiff accepts the benefits of a contract:
"It is well established ... that `[a] plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions.' Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131, 1134 (Ala.2000); see Ex parte Stamey, 776 So.2d 85 (Ala.2000); Infiniti of Mobile, Inc. v. Office, 727 So.2d 42 (Ala.1999); Ex parte Dyess, 709 So.2d 447, 451 (Ala. 1997); Ex parte Warren, 718 So.2d 45, 47-48 (Ala.1998) (the Court, in a plurality opinion, stated that one who asserts that she is not a party to a contract in order to avoid arbitration `disclaim[s] any basis for recovery on her claims' under the contract); see also Southern Energy Homes, Inc. v. Hennis, 776 So.2d 105, 108 (Ala.2000) (mobile-home buyer could not `pursue his breach-of-express-warranty claim' and `at the same time, disavow the arbitration provision contained [in the written warranty]'); Southern Energy Homes, Inc. v. Kennedy, 774 So.2d 540, 547 (Ala.2000) (plaintiffs were `foreclosed from maintaining any claim they may have had against Southern Energy for its alleged breach of the express written warranty' the plaintiffs swore by affidavit they never received); Delta Constr. Corp. v. Gooden, 714 So.2d 975, 981 (Ala.1998)."
Ballard Servs., Inc. v. Conner, 807 So.2d 519, 523 (Ala.2001).
In Southern Energy Homes, Inc. v. Ard, 772 So.2d 1131 (Ala.2000), Michael Ard and Marsha Ard purchased a home manufactured by Southern Energy Homes, Inc. After experiencing various problems with the manufactured home, the Ards sued Southern Energy alleging, among other things, a breach-of-express-warranty claim and a violation of the Magnuson-Moss Act. When Southern Energy moved the trial court to compel arbitration based on an arbitration agreement contained in its express warranty, the Ards argued that they had never entered into a written agreement to arbitrate. The trial court denied Southern Energy's motion to compel arbitration.
This Court reversed the trial court's order denying Southern Energy's motion to compel arbitration, noting, among other things, that the Ards had sued Southern Energy on an express-warranty theory. The only warranty contained in the record was Southern Energy's express warranty, which included an arbitration provision. This Court held that the Ards could not claim the benefits of the express warranty by alleging that Southern Energy was bound to the promises contained therein, and simultaneously repudiate the warranty's *230 "burdens and conditions" by arguing that they should not be bound by the arbitration provision. Thus, we found that the Ards had manifested an acceptance of the warranty and its arbitration provision and that they could be compelled to arbitrate their claims against Southern Energy. Id. at 1134.
We begin our analysis of the facts of this case by noting that our review of the trial court's order, similar to our review of a summary judgment, is limited to the pleadings and evidence that were before the trial court at the time it made its ruling. See Ryan's Family Steak Houses, Inc. v. Regelin, 735 So.2d 454, 457 n. 1 (Ala.1999); see also Cowen v. M.S. Enters., Inc., 642 So.2d 453, 454 (Ala.1994)(citing King v. Garrett, 613 So.2d 1283 (Ala.1993); Moody v. Hinton, 603 So.2d 912 (Ala. 1992)). Although the Lyleses voluntarily dismissed their express-warranty claim before the trial court ruled on Pioneer's motion to compel arbitration, they did not voluntarily dismiss their Magnuson-Moss Act claim until after the trial court had issued its order compelling arbitration.[2] Thus, when the trial court entered its ruling on the motion to compel arbitration the Lyleses' Magnuson-Moss Act claim was still pending.
In their complaint, the Lyleses made the following allegations in support of their Magnuson-Moss Act claim against Pioneer:
"Count Nine: Violation of Magnuson-Moss Warranty Act:
". . . .
"37. [Pioneer] failed to perform under its written warranties and complete repairs to the [Lyleses'] mobile home as guaranteed in the express warranties. [Pioneer] failed in its efforts to properly repair defects in the mobile home in violation of 15 U.S.C. 2301 et seq.
"38. [The Lyleses] timely advised [Pioneer] of defects in their mobile home on numerous occasions and afforded [Pioneer] reasonable opportunity to comply with [its] warranties and complete repairs.
"39. As a proximate result, [the Lyleses] were caused damages including but not limited to, actual and consequential damages; attorneys' fees, inconvenience, annoyance and mental anguish."
The only express or written warranty in the record is Pioneer's express warranty, which contains the arbitration provision quoted above. Like the Ards, the Lyleses purported to claim the benefits of Pioneer's express warranty by alleging that Pioneer should be bound to perform its duties under the warranty, while simultaneously repudiating the condition contained in the warranty that warranty disputes would be settled by arbitration. Because the Lyleses manifested assent to Pioneer's written express warranty by availing themselves of its benefits, the trial court correctly held them to the conditions of the warranty by compelling arbitration as to the warranty disputes, as the arbitration provision found in the warranty stipulated.

II.
The Lyleses argue that the trial court erroneously compelled them to arbitrate *231 because the language in the written warranty calls for arbitration of warranty disputes "unless prohibited by state law."[3] The Lyleses contend that because § 8-1-41(3), Ala.Code 1975, prohibits the enforcement of predispute arbitration contracts, state law prohibits the enforcement of the arbitration provision in the warranty.
The Lyleses' argument as to this issue is similar to the plaintiffs' argument in Beaver Construction Co. v. Lakehouse, L.L.C., 742 So.2d 159 (Ala.1999). In Beaver, the plaintiffs argued on appeal that they could not be compelled to arbitrate their claims against the defendants because the contract containing the controlling arbitration clause stated that "[t]he Contract shall be governed by the law of the place where the Project is located." The plaintiffs reasoned that because the project was located in Alabama and because Alabama law prohibits the enforcement of predispute arbitration contracts, the contract containing the arbitration clause could not be enforced. This Court held, however, that "the law in Alabama is that agreements to arbitrate are enforceable if they are part of a valid contract involving interstate commerce." 742 So.2d at 163 (citing Georgia Power Co. v. Partin, 727 So.2d 2, 5 (Ala.1998)).
Furthermore, this Court in Beaver addressed the plaintiffs' contention that another paragraph in the contract negated the arbitration provision:
"[T]he plaintiffs essentially argue that the parties included ¶¶ 4.5.1 to .7, which set forth in detail specific procedures to be followed in arbitration, only to negate in ¶ 13.4.1 those very provisions. We cannot construe the Construction Contract in such a manner.
"`A court in construing contracts, which on their face are ambiguous, will look to the intention of the parties.' Charles H. McCauley Assocs., Inc. v. Snook, 339 So.2d 1011, 1015 (Ala.1976). `Courts cannot make contracts for parties, but must give such contracts as are made a reasonable construction and enforce them accordingly.' Id. This is so, because `"it is presumed that parties intend to make reasonable contracts."' Ex parte Bonds, 581 So.2d 484, 487 (Ala. 1991) (quoting Weathers v. Weathers, 508 So.2d 272, 274 (Ala.Civ.App.1987)).
"To be sure, the parties mightin any disputeagree to litigate, and, in so doing, waive the right to compel arbitration. However, the same result would obtain in the absence of a contract, or if the contract was silent on the question of arbitration. Because the Construction Contract is not silent, the parties must have intended to limit the forum for redress."
Beaver Constr. Co., 742 So.2d at 164.
Thus, the law in Alabama is that a predispute arbitration agreement is enforceable if the agreement is included in a valid contract involving interstate commercean issue the parties in this case do not dispute. Giving the warranty a reasonable construction, we must conclude *232 that the parties intended to limit the forum for redress because the warranty was "not silent" on the question of arbitration. Id. Otherwise, Pioneer could have merely omitted the provision. Alabama law does not prohibit the enforcement of the arbitration provision in this case. Therefore, the trial court did not err in compelling the Lyleses to arbitrate their warranty disputes based on the arbitration provision in the warranty.

III.
Finally, the Lyleses argue that even if they must arbitrate their claims, the trial court erred in requiring them to submit all of their claims against Pioneer to arbitration. Specifically, the Lyleses claim that the warranty only requires that "warranty disputes" be submitted to arbitration. We agree.
In its motion to compel arbitration, Pioneer relied upon broadly drafted language contained in a separate, unsigned arbitration agreement that required arbitration of "all disputes, claims, or controversies of any kind or nature," to support its argument that all of the Lyleses' claims should be submitted to arbitration. Parker Holloway, Pioneer's director of service, testified in his affidavit that a copy of the separate arbitration agreement, along with the written warranty, was enclosed in a homeowner's manual that was delivered with the Lyleses' mobile home. The Lyleses, on the other hand, testified in their depositions that when their home was delivered, they did not receive a homeowner's manual. In fact, the Lyleses maintain that they did not receive the homeowner's manual until shortly before they filed this action.
This Court has held that a manufacturer's "`unilateral enclosure of an arbitration provision in a homeowner's manual is without moreinsufficient as a matter of law to show that [the homeowner] assented to all the contents therein.'" Ex parte Cain, 838 So.2d at 1027 (quoting Southern Energy Homes v. Hennis, 776 So.2d 105, 108-09 (Ala.2000)). Pioneer has failed to demonstrate that the Lyleses assented in any way to the unsigned arbitration agreement. In addition to requiring that "all disputes, claims, or controversies of any kind or nature" be submitted to arbitration, the unsigned arbitration agreement further provides, just above the signature lines: "MY SIGNATURE BELOW ATTESTS TO THE FACT THAT I HAVE READ THE ABOVE TERMS, THAT I UNDERSTAND THE NATURE AND TERMS OF THIS AGREEMENT, AND THAT I VOLUNTARILY AND OF MY OWN FREE WILL AGREE TO BE LEGALLY BOUND TO ALL OF THE ABOVE TERMS." (Capitalization in original.) It is undisputed that although the arbitration agreement in the record contains signature lines, neither the Lyleses nor any representatives of Pioneer ever signed it. Furthermore, the arbitration agreement does not refer in any way to Pioneer's written warranty, and the written warranty does not refer to the separate arbitration agreement.
Pioneer does not explain how the Lyleses assented to the terms of the unsigned arbitration agreement; instead, it merely claims that the agreement was included in a homeowner's manual that was delivered with the Lyleses' home. Pioneer's allegation that it included an arbitration agreement in a homeowner's manual allegedly delivered to the Lyleses with the mobile home is insufficient to prove that the Lyleses agreed to arbitrate all of their claims. Because Pioneer has failed to demonstrate that the Lyleses assented to the unsigned arbitration agreement, the trial court erred in compelling arbitration pursuant to the terms of that agreement. The only arbitration agreement to which *233 the Lyleses assented is Pioneer's written warranty, which requires only that "warranty disputes" shall be submitted to arbitration. Therefore, we reverse the trial court's order insofar as it compelled the Lyleses to submit anything other than "warranty disputes" to arbitration.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
HOUSTON, SEE, HARWOOD, and STUART, JJ., concur.
LYONS and WOODALL, JJ., concur in the result.
MOORE, C.J., and JOHNSTONE, J., concur in part and dissent in part.
MOORE, Chief Justice (concurring in part and dissenting in part).
I concur with the Court's reversal of the trial court's order insofar as the order compels arbitration as to any claims that do not involve "warranty disputes." I dissent, however, from the Court's affirmance of the trial court's order insofar as it compels arbitration of "warranty disputes."
The arbitration provision specifically states that "[w]arranty disputes will be settled under the Rules of Arbitration, unless prohibited by state law" (emphasis added). The plain reading of this provision is that where state law prohibits the settling of disputes by arbitration, the arbitration provision is not enforceable. Alabama law prohibits specific performance of a predispute arbitration provision, see § 8-1-41(3), Ala.Code 1975; therefore, the arbitration provision in this case is not enforceable. I take issue with the Court's use of the Federal Arbitration Act, 9 U.S.C. § 2, to skirt this plain language for the reasons stated at length in my dissent in Selma Medical Center, Inc. v. Fontenot, 824 So.2d 668 (Ala.2001). None of the Lyleses' claims should be submitted to arbitration.
JOHNSTONE, Justice (concurring in part and dissenting in part).
I concur insofar as the main opinion reverses the order of the trial court granting the motion to compel arbitration. I respectfully dissent insofar as the main opinion affirms the order of the trial court.
Pioneer's claim to a right to arbitrate is expressly limited by the contract language, "unless prohibited by state law." Alabama state law prohibits the specific enforcement of pre-dispute arbitration agreements, § 8-1-41(3), Ala.Code 1975. The law to the contrary is federal law, as recognized by the Alabama courts. By agreeing to the language, "unless prohibited by State Law," Pioneer waived the supremacy of the federal law in this transaction.
NOTES
[1] The parties dispute whether the Lyleses requested that Pioneer make repairs to the home during this time.
[2] Rule 41(a) and (b), Ala. R. Civ. P., provides that a plaintiff may move for the voluntary dismissal of a claim at any time before service by the adverse party of an answer or a motion for a summary judgment, whichever occurs first. See Hamilton v. Shearson-Lehman American Express, Inc., 813 F.2d 1532, 1535 (9th Cir.1987)(holding that "[a] motion to compel arbitration and stay proceedings is not the equivalent of an answer or a motion for summary judgment," for the purposes of Rule 41, Fed.R.Civ.P.); Merit Ins. Co. v. Leatherby Ins. Co., 581 F.2d 137 (7th Cir. 1978)(same).
[3] The same sentence"Warranty disputes shall be settled under the Rules of Arbitration, unless prohibited by State Law"also appears on a postcard contained in the record. The postcard contains the Lyleses' signatures; the serial number, brand, and model of the Lyleses' mobile home; and the Lyleses' address. However, there is absolutely no testimony or other evidence in the record explaining the purpose of this postcard, and the purpose of the card is not readily apparent from its face. There is also no evidence as to when the card was signed or as to the circumstances surrounding the execution of the card. Therefore, although both parties make arguments concerning the postcard, there is no evidence in the record from which to make any determinations concerning its significance.