[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————————

No. 05-10997

———————————————

D. C. Docket No. 03-00477-CV-C

FILED

**U.S. COURT OF APPEALS
ELEVENTH CIRCUIT**
September 15, 2005
**THOMAS K. KAHN
CLERK**

JYOTI BHUSHAN,

Plaintiff-Counter-
Defendant-Appellant,

versus

LOMA ALTA TOWERS OWNER'S ASSOCIATION, INC.,
ROBERT L. GREEN, DOMINIC TRIONE,

Defendants-Counter-
Claimants-Appellees.

———————————————

Appeal from the United States District Court
for the Southern District of Alabama

———————————————

**(September 15, 2005)**

Before ANDERSON, BLACK and PRYOR, Circuit Judges.

PER CURIAM:

Plaintiff-Appellant, Jyoti Bhushan, appeals the district court's order granting

summary judgment on all counts to the Loma Alta Towers Association and Robert L. Green (the "Association") and also appeals the court's award of $58, 906.15 in attorney's fees and expenses to the Association.[1] We affirm the district court's opinion.

## I. BACKGROUND

Jyoti Bhushan, owned a condominium in the Loma Alta Towers building in Daphne, Alabama from 1991 until September, 2001. On August 11, after a rainstorm, Bhushan's balcony flooded. The water leaked into the condominium from the apartment causing over two thousand dollars in damage and threatening harm to other parts of the building. The Association first attempted to contact Bhushan, who had moved to Conyers, Georgia. When the Association failed to reach him, it hired Affinity Clean and Restoration, Inc. ("Affinity") to remove the water and remediate. The Association promised Affinity that it would pay the bill if Bhushan did not. The final bill, after various adjustments not relevant here, came to $2,203.21. Bhushan refused to pay, claiming that the flooding and attendant damage to his unit were the Association's responsibility. The Association, which

---

[1] The original defendants in this suit were the Loma Alta Towers Owner's Association, Inc, the president of the Association's Board, Robert L. Green, and the Association's Treasurer, Dominic Trione. Bhushan acknowledged abandonment of his claims against Trione at the summary judgment hearing. Summary Judgement Hearing at 4. Because Green's potential liability is entirely derivative, and for ease of reference, we use the term "the Association" to refer to both the Owner's Association, and to Green.

knew Bhushan was attempting to sell the property, responded by conditioning its payment of the bill (which was reflected as a lien on the property) on Bhushan's agreement to release the Association from all claims. The Association presented Bhushan with its proposed release just before a prospective new owner was scheduled to close on the property. The Association gave the closing agent a cashier's check for $2,203.21, payable to Affinity, and instructed the agent not to turn over the check unless Bhushan signed the release. At first, Bhushan refused to sign, instead proposing an alternative release. When the Association rejected Bhushan's version, Bhushan signed the Association's release, but only after making unilateral modifications. Specifically, Bhushan attempted to incorporate by reference the proposed release already rejected by the Association. The closing agent released the check and the sale was completed.[2]

Shortly after selling the condo, Bhushan sued the Loma Alta Towers Owner's Association for violation of 42 U.S.C. Sec. 1981, 42 U.S.C. Sec. 1985, 42 U.S.C. Sec. 3604(b) (The Fair Housing Act), and for fraud, breach of contract and

---

[2] We provide this summary of the facts to facilitate our discussion below. For a more thorough, detailed review, see Memorandum Opinion and Order, February 10, 2005 ("Memorandum II") at 2-22. For sake of brevity, we do not discuss the $195 check that Bhushan paid to the Association at the closing, nor the various adjustments made over time to the bill for Affinity's services. Neither issue is material to the issues raised on appeal.

rescission.[3] The breach of contract claim was based on the theory that the Association's failure to perform repairs to common areas of the condominium complex had led to the flooding in Bhushan's apartment. The Association counter-claimed for costs and fees. The parties agreed to have a magistrate judge preside over the case. The magistrate judge dismissed all of Bhushan's claims at summary judgment, holding that Bhushan had abandoned his 1985 and Fraud claims and that the rest of his claims were barred by the valid agreement to release the Association. The parties notified the district that they had reached a settlement with regards to payment of fees and expenses. The case was dismissed with prejudice. Shortly thereafter, the Association moved to reinstate the case "given plaintiff's refusal to abide by his counsel's advice and execute the settlement agreement." Memorandum Opinion and Order, February 10, 2005 ("Memorandum II") at 2, n.1. The magistrate judge reinstated the case and awarded the Association $58,906.15 on grounds that Bhushan had violated his agreement to release the Association and, in doing so, became responsible for the Association's fees and expenses in defending the suit.

Bhushan appeals the determination that the release was valid, and appeals the corollary order mandating his payment of the Association's fees and expenses.

---

[3] Bhushan's federal discrimination claims are rejected without need for discussion.

4

## II.  DISCUSSION

Bhushan attacks the district court decision on three grounds.  First, he argues that the release was invalid because his attachment of additional terms rendered his acceptance a mere counter-offer.  In other words, according to Bhushan, there was no "meeting of the minds".  Second, Bhushan argues that the release is invalid because it was signed under economic duress.  Finally, Bhushan contends that the court erroneously imposed a "tender" requirement on his contract and duress claims.  According to Bhushan, tender requirements do not apply to breach of contract claims at all.  He also argues that tender was not required with regard to his duress claim because tender is only required in fraud cases or, in the alternative, because the consideration he received was without value.

We find Bhushan's arguments unpersuasive, and affirm the decision of the district court.  It is well established under Alabama law that "[a] plaintiff cannot simultaneously claim the benefits of a contract and repudiate its burdens and conditions."  Southern Energy Homes, Inc., v. Ard, 772 So.2d 1131, 1134-35 (Ala. 2000));  Lyles v. Pioneer Housing Systems, Inc., 858 So2d 226, 229 (Ala. 2003).  This rule makes good sense because "to permit [plaintiff] to retain the money that she got under the release, and to also repudiate same . . . would allow her to divide or separate the transaction by accepting the favorable part and rejecting what was

unfavorable to her." Ledbetter v. Frosty Morn Meats, 150 So.2d 365, 371 (Ala. 1963).

Bhushan received the benefit of the Association's check for $2,203.21 in that he was able to sell the property without having to pay the cost of the flooding repair bill. As the magistrate judge noted, had the Association not released its check, "the only way the closing would have gone off without a hitch would have been for Bhushan to pay the entire amount of Affinity's bill." Memorandum Opinion and Order, October 18, 2004 ("Memorandum I") at 33. Having obtained the benefit of the bargain, Bhushan is in no position to challenge the release which was so clearly the Association's price for turning over the cashier's check.[4]

In his reply brief, Bhushan attempts to distinguish Lyles and Ard by citing to the Alabama Supreme Court's recent decision in Springhill Nursing Homes, Inc. v. McCurdy, 898 So.2d 694 (Ala. 2004) for the proposition that "the presence of mere technical consideration is not enough, absent actual benefit." Reply Brief at 3. In Springhill, plaintiff sought to avoid an arbitration clause in a nursing home

_____

[4] We also note that even had Bhushan succeeded in substituting his own version of a release for the Association's release, the effect still would have been to bar the claims he now seeks to bring. He now argues that because his proposal differed in other ways – e.g. released him from potential claims made by the Association, allowed him access to the apartment for seven days after closing, etc. – that there was no "meeting of the minds." We need not address this argument because, as noted above, Bhushan accepted the benefits of the contract and is thus foreclosed from challenging its validity.

6

admission contract. Plaintiff never signed the contract. Although her original complaint included breach of contract claims, she amended to voluntarily dismiss them prior to the trial court's denial of the nursing home's motion to compel arbitration. The nursing home, citing Lyles and Ard, argued that because plaintiff had originally included a breach of contract claim in her complaint she could not attack the contract's arbitration clause on grounds of lack of consent. The Alabama Supreme Court disagreed, holding that her original inclusion of breach of contract claims was insufficient to constitute either a "manifest[ation] of assent to th[e] contract" or an attempt to "avail herself of any benefit of the contract". Springhill, 898 So.2d at 700-01. The Springhill court emphasized that the plaintiffs in Lyles and Ard had accepted the benefits of their mobile home contracts by having repairs done under the home warranty, as well as by suing under the favorable provisions of same contracts whose burdens they sought to escape. The plaintiff in Springhill, in contrast, merely included a breach of contract claim at an early stage of the proceeding.

As should be clear from the above discussion, Springhill does not help Bhushan. This is because there is nothing analogously technical about the benefit Bhushan received. Indeed, one suspects that is it precisely because the benefit – the Association's payment of the Affinity bill in time for Bhushan's closing – was

7

significant that Bhushan was anxious to receive it rather than forego the release and pay Affinity himself.

Next, we address Bhushan's duress claim. The elements of economic duress are:

> (1) wrongful acts or threats; (2) financial distress caused by the wrongful acts or threats; [and] (3) the absence of any reasonable alternative to the terms presented by the wrongdoer. The doctrine of economic duress applies only to 'special, unusual, or extraordinary situations in which unjustified coercion is used to induce a contract, as where extortive measures are employed, or improper or unjustified demands are made, under such circumstances that the victim has little choice but to accede thereto. The entering into a contract with reluctance or even dissatisfaction with its terms because of economic necessity does not, of itself, constitute economic duress invalidating the contract. Unless unlawful or unconscionable pressure is applied by the other party to induce the entering into a contract, there is not economic compulsion amounting to duress. A claim of economic duress cannot be based merely upon the grounds of driving a hard bargain. Rather, the "wrongful act" prong of the test for economic duress is not satisfied unless the victim has acted in response to unlawful or unconscionable pressure.

Ponder v. Lincoln Nat. Sales Corp., 612 So.2d 1169, 1170 (Ala. 1992) (quotations and citations omitted).

Like the magistrate judge, we are dubious that any of the conditions are met but find it necessary only to address the third prong here, i.e. "the absence of any reasonable alternative to the terms presented by the wrongdoer". We agree with

8

the magistrate judge that Bhushan "had a readily viable and reasonable alternative to the terms presented by the defendants and that was simply to pay the Affinity bill in its entirety out of the sale proceeds passing to him (over $112,000), assuming no other funds were available to him, and then pursue the defendants for the very claims he released when he signed the [Association] release [.]" Memorandum I at 41.[5] Indeed, Bhushan's attorney conceded this point at the summary judgment hearing. Summary Judgement Hearing at 14-15.

Finally, we turn to Bhushan's contention that the court erroneously imposed a tender requirement on his claims for breach of contract and duress. Citing no

---

[5]    In challenging this holding, Bhushan relies upon Ralls v. First Fed. S& L Ass'n, 422 So.2d 765 (Ala. 1982), in which the Alabama Supreme Court overturned a grant of summary judgment for Defendants on grounds that Plaintiff presented a question of fact as to whether or not he entered a contract under duress. In Ralls, Plaintiff obtained a $600,000 loan at 10% interest for purposes of building a hotel. Plaintiff presented evidence that after he had applied for the loan and paid 1% of the loan amount ($6,000) to the bank as a service charge, the bank insisted on a requirement that the hotel be completed by a certain date as a condition of maintaining the 10% interest rate. Plaintiff presented evidence that the bank assured him orally that this condition was a mere formality and that an extension at the 10% rate would be granted if it turned out that the hotel could not completed on time. When the hotel was not completed on time, the bank insisted on a higher rate as a condition for granting an extension. The Alabama Supreme court held that summary judgment was inappropriate because a jury could find that the plaintiff, "was justified in committing himself financially to the point where he had no choice but to later accept the loan regardless of the higher interest rate." Id. at 766.

The instant case differs from Ralls in two significant ways. First, the Association did not ever state or imply that the release provision was a mere formality that it would not seek to enforce. Second, unlike the plaintiff in Ralls, who had no viable way of achieving his objective other than to acquiesce to the bank's unexpected demand for a higher interest rate, Bhushan could have paid the relatively modest sum of $2,203.21 either out of his own pocket or out of the $112,000 he received at the closing, rather than accept the Association's cashier check. Had he done so, he would have avoided signing a release and would have been free to seek reimbursement for the Affinity bill, and to pursue any other claims against the Association.

9

authority, Bhushan first argues that tender requirements apply only to fraud claims and are inapplicable to claims for breach of contract or duress. We doubt this is true as a matter of law. See, e.g. 53 A.L.R. 2d 757 ("When a release or compromise settlement of a claim has been obtained through fraud, duress, or mistake, or at a time when the person executing the release was not mentally competent, and such person seeks to recover on his original cause of action, a tender or offer to return the consideration received for the release is ordinarily held to be a condition precedent to its being set aside.") We need not reach this issue, however, because whatever the scope of the tender requirement, the more general principle that a party receiving the benefit of a bargain cannot seek to escape its contractual obligations is not limited to fraud or duress claims. See, e.g. Ard, 772 So. 2d at 1134-35 (applying the rule to a breach of contract claim); Value Auto Credit, Inc. v. Talley, 727 So.2d 61 (Ala. 1999) (same).

Bhushan also argues that he was not required to tender the Association's cashier's check because the check did not represent valuable consideration, and therefore could be kept without prejudicing his attack of the release. This argument is really a merits argument in disguise. Bhushan argues, in effect, that his claim that the Association was responsible for the cost of repairing his condo after the August 11 flooding was so strong as to be indisputable. Regardless of the

strength of his claim, the fact remains that the Association had neither admitted its responsibility nor agreed to pay at the time Bhushan signed the release and thus avoided having to pay Affinity himself. Rather, the Association only agreed to pay the clean up costs on condition that Bhushan agreed not to sue. "The compromise of a disputed claim made in good faith, though it ultimately appears that the claim was without merit, is sufficient consideration for a promise." William A Smith Contracting Co. v. West Central Texas Municipal Water Dist., 344 F.2d 470, 475 (5th Cir. 1965). The Association's position may have been weak, and ultimately may have proved to be without merit, but we find no evidence that it was asserted in bad faith.

Bhushan's final argument regarding tender is equally unpersuasive. According to Bhushan, although payment of a meritless, disputed claim can amount to consideration for purposes of forming a contract, such consideration is a "claim of no value" which "cannot be restored for purposes of any tender requirement." Bhushan cites no authority or logical support for this proposition, which differs significantly from the well-established rule in tender cases that the releasor must "as a condition precedent to avoiding the release, . . . return the consideration

11

therefor within a reasonable time[.]" <u>Ledbetter</u>, 150 So.2d at 371.[6] At any rate, as stated above, we rely on the broader rule that one who has accepted a contract's benefit may not challenge its validity in order to escape its burdens.

## III.  CONCLUSION

For the foregoing reasons, the district court's summary judgment order and its order awarding $58,906.15 in fees and costs to defendant are AFFIRMED.

---

[6]     Bhushan also cites to <u>Taylor v. Dorough</u>, 547 So.2d 536, 540-41 (Ala. 1989) for the proposition that the tender requirement is "not absolute" and "must be applied to comport with general equitable principles."  In <u>Taylor</u>, the court waived the tender requirement  on grounds of impossibility where the plaintiff/releasor was an injured party who had spent the consideration on medical bills incurred as a result of an auto collision with the defendant/releasee in order to prevent the hospital from foreclosing on her home.  Such "impossibility" is simply not an issue in the instant case.  We also note that, unlike the instant case, <u>Taylor</u> involved evidence of egregious fraud, as well as a marked disparity between the plaintiff and the defendant's agent, in terms of sophistication and expertise.